MILLEDGE A. HART, III, Individually and on Behalf of All Other Persons Similarly Situated and Derivatively on Behalf of GENERAL MOTORS CORPORATION, Respondent, v GENERAL MOTORS CORPORATION et al, Appellants.

First Department, June 25, 1987

## APPEARANCES OF COUNSEL

*Dennis J. Block* of counsel *(Irwin H. Warren, Stephen A. Radin* and *Timothy E. Hoeffner* with him on the brief; *Weil, Gotshal & Manges,* attorneys), for individual directors of General Motors Corporation, appellants.

*Roy L. Reardon, Joseph F. Tringali, Stephen C. Neal, Robert J. Kopecky* and *William F. Dolan* of counsel *(Simpson Thacher & Bartlett, Kirkland & Ellis;* and *Michael J. Basford* and *Louis H. Lindeman, Jr.,* attorneys), for General Motors, appellant.

*Evan R. Chesler* of counsel *(Thomas D. Barr, Robert N. Feltoon, Robert B. Silver, Christopher M. Mason, Thomas W. Luce, III,* and *M. David Bryant, Jr.,* with him on the brief; *Cravath, Swaine & Moore,* and *Hughes & Luce,* attorneys), for H. Ross Perot, appellant.

*Melvyn I. Weiss* of counsel *(Michael C. Spencer* and *Steven G. Schulman* with him on the brief; *Milberg Weiss Bershad Specthrie & Lerach,* attorneys), for respondent.

## OPINION OF THE COURT

Sullivan, J.

In October 1984, General Motors (GM), a Delaware corporation with its principal place of business in Michigan, acquired 100% of the voting securities of Electronic Data Systems Corp. (EDS), a highly successful computer services firm, at a cost of some $2,500,000,000. Under the terms of the acquisition, each outstanding share of EDS stock was exchanged, at the option of the EDS shareholder, for either $44 in cash or a combination of $35.20 in cash, a share of a newly created class of GM common stock (Class E stock), a nontransferable contingent promissory note, maturing in 1991, entitling the holder to an amount equal to the difference between $62.50 and the 1991 market price of Class E stock, and a "Special Interest" designed to compensate for certain Federal tax consequences. H. Ross Perot, the then chairman of EDS, chose the second option and became GM's largest individual shareholder in the process. Perot remained as chairman of EDS and was also named a director of GM.

Problems began to develop between EDS and GM almost immediately, and Perot became an increasingly vocal critic of GM. As the end of 1986 approached, Perot's differences with GM's board of directors had intensified to the point that it

decided to buy him out. Accordingly, GM's directors and Perot negotiated an agreement whereby GM, for a total price of approximately $750,000,000, the purported equivalent of approximately $61.90 per share and related note, would purchase Perot's Class E stock and corresponding contingent notes and those of three of his associates in return for, *inter alia*, Perot's resignation as a GM director and chairman of EDS and his agreement not to criticize GM publicly or repurchase its stock or otherwise seek to exercise control over GM for the next five years. If Perot were to voice any public criticism of GM or its management, he could be penalized up to $7,500,000. On November 30, 1986, approval of the transaction was recommended by a special review committee of GM's board of directors, which, itself, on the following day, gave its unanimous approval. The transaction was consummated that same day.

On December 5, 1986, plaintiff, a Texas resident who had become a holder of several hundred thousand shares of GM Class E stock and related notes in 1984 in exchange for his stock holdings in EDS, purporting to act derivately on behalf of GM and as a class representative of all its Class E stockholders, commenced this action against GM, its directors and Perot, challenging the board's December 1, 1986 decision authorizing the purchase transaction. Alleging breach of fiduciary duty and waste, plaintiff claims that GM's purchase of Perot's stock and notes, as well as Perot's resignations from both GM and EDS, damaged GM, EDS and GM's Class E stockholders. In essence, plaintiff contends that the payment of $750,000,000 incorporated a premium amounting to hundreds of millions of dollars over the fair market value of the surrendered stock and notes, and that the premium was paid to induce Perot to remove himself from his corporate offices and directorship of GM. In effect, plaintiff alleges a sale of corporate office for personal gain. In the only cause of action asserted against Perot, plaintiff seeks rescission of the transaction. Plaintiff did not, however, prior to the commencement of this action, make a demand on GM's board of directors that it cause GM to pursue the claim. In conclusory terms, he alleges that such a demand would have been futile.

On December 4, 1986, the day before the commencement of this action, two similar derivative actions were filed in the Delaware Chancery Court by other GM shareholders, and four additional State court actions were instituted in Delaware between December 5, 1986 and February 4, 1987. On April 13,

1987, during the pendency of this appeal, the Delaware Chancery Court dismissed one of the December 4th actions on the ground that the plaintiffs had failed to make a prelitigation demand on the board of directors, or to plead with particularity facts which, if proved, would excuse such demand. We note that the complaint there apparently contained allegations substantially more particularized than those pleaded here as to the futility of a prelitigation demand.

A total of nine additional actions have been filed in Federal courts in five different States. These actions also include the same common-law claims of breach of fiduciary duty and waste as are alleged in the instant action and the Delaware actions, as well as allegations under the Federal securities laws. These nine actions, four of which currently name Perot as a defendant, were referred to the Judicial Panel on Multidistrict Litigation, which consolidated them and transferred the eight actions pending in districts other than the District of Delaware to the Delaware court "to prevent duplication of discovery and avoid inconsistent pretrial rulings (especially with respect to class and derivative action issues)."

After the defendants had moved in the Delaware State court actions to dismiss due to the plaintiffs' failure to make a demand on GM's board of directors, the GM defendants moved, at the court's direction, to dismiss this action on two independent grounds: plaintiff's failure to make a demand on GM's board of directors—the precise issue already before the Delaware Chancery Court—and forum non conveniens, or, alternatively, on the latter ground only, for a stay of the action. Perot also moved to dismiss or to stay the New York proceedings.[1] The motions were denied in all respects, and this appeal followed. We reverse and dismiss the complaint on the ground of forum non conveniens.

The nature of the challenged transaction itself, as well as the equitable relief sought, militates against separate determinations by courts in different jurisdictions. One of the abiding principles of the law of corporations is that the issue of corporate governance, including the threshold demand issue, is governed by the law of the State in which the corporation is chartered, in this case, Delaware. As the Court of Appeals

---

1. Perot moved to dismiss the first cause of action for rescission on the ground that no wrongdoing is attributed to him and since, in any event, plaintiff has an adequate remedy at law, and also moved to dismiss or, alternatively, to stay the action because of the pendency of prior actions seeking virtually the same relief.

stated in *Diamond v Oreamuno* (24 NY2d 494, 503-504) in discussing the duties and obligations of directors and officers and their relation to the corporation, "The primary source of the law in this area ever remains that of the State which created the corporation." The United States Supreme Court has recently observed, "No principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations" *(CTS Corp. v Dynamics Corp. of Am.*, 481 US —, 95 L Ed 2d 67 [Apr. 21, 1987]). In upholding the concept of single State resolution of issues of corporate governance against a Commerce Clause challenge, the court noted: "This beneficial free market system depends at its core upon the fact that a corporation—except in the rarest situations—is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation" *(supra,* 481 US, at —, 95 L Ed 2d, at 86). Thus, in accordance with well-settled principles these derivative claims should be resolved under the law of Delaware, the State of GM's incorporation.[2]

In this regard, the motion court erred in concluding that the December 1st transaction "falls within that category of corporate acts where the liability of a director can be decided by different local law rules in different states." The validity of the GM/Perot transaction cannot be decided on a State-by-State basis. In this case, for example, plaintiff asks the court to order "the return to GM of the payments made to Mr. Perot and the return to him of his Class E shares and the contingent notes." Plaintiff also seeks Perot's reinstatement as a director of GM and EDS. Most of the other 15 pending derivative actions also seek rescission. The confusion which would be created by a New York judgment granting rescission nullifying the December 1st transaction and reinstating Perot as a director and the denial of such relief in Delaware is self-

---

2. Although plaintiff has labeled his claims on behalf of the Class E shareholders as direct claims by asserting a class action, they appear to be purely derivative in nature. Plaintiff alleges that the December 1st transaction diminished the value of all the Class E shares held by GM's thousands of Class E shareholders. Courts have repeatedly held that an allegation of diminution in the value of stock based on a breach of fiduciary duty gives rise to a derivative action only. *(See, e.g., Lewis v Chiles,* 719 F2d 1044, 1049; *Papilsky v Berndt,* 466 F2d 251, 255, *cert denied* 409 US 1077; *Bokat v Getty Oil Co.,* 262 A2d 246, 249 [Del].) To the extent a diminished earnings prospect on the part of EDS is alleged, an injury only to EDS, and in turn GM, which owns 100% of EDS, and not to GM's Class E shareholders, who own shares in GM, not EDS, is asserted.

evident. "Uniform treatment of directors, officers and shareholders", the Restatement notes, "is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law." (Restatement [Second] of Conflict of Laws § 302, comment e, at 309.)

The motion court's reasoning that "[b]y choosing to do business in every state GM has subjected itself to public policy as embodied in the laws of those states," an argument that has some merit, ignores the risk that every State might seek to judge the same board of directors' decision under different public policy standards, and completely disregards, as well, the need for uniform application of one body of law to corporations and their directors on issues involving the regulation of a corporation's internal affairs. As the Supreme Court has noted: "[O]nly one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands * * * The [challenged Illinois] Act * * * applies to corporations that are not incorporated in Illinois and have their principal place of business in other States. Illinois has no interest in regulating the internal affairs of foreign corporations." *(Edgar v Mite Corp.,* 457 US 624, 645-646.)

In *Greenspun v Lindley* (36 NY2d 473), a case involving a Massachusetts business trust in which the trust instrument contained an explicit choice of law provision, the Court of Appeals likewise recognized the salutary effect of a rule that promotes certainty and uniformity: "[W]e incidentally note the pragmatic as well as the theoretical advantages which would appear to flow from a conclusion that the rights of all shareholders of this real estate investment trust in comparable situations should be determined on a trust-wide basis rather than in consequence of the litigants' choice of forum or the assessment by several courts as to which State it is where the investment trust may be said to be present" *(supra,* at 477; *see also, Skolnik v Rose,* 55 NY2d 964, 965-966).

Moreover, contrary to the motion court's finding, GM's incorporation in Delaware cannot be dismissed as merely "fortuitous". In incorporating in a particular State, shareholders, for their own particular reasons, determine the body of law that will govern the internal affairs of the corporation and the conduct of their directors. Delaware is obviously a

State in which, for various reasons, many businesses choose to incorporate. The corporation and its shareholders rightfully expect that the laws under which they have chosen to do business will be applied. For choice of law purposes, the decision of shareholders to incorporate under the law of one jurisdiction is no different from designating the law governing a business trust, which, prima facie *(Greenspun v Lindley, supra,* 36 NY2d, at 477), determines the applicable law.

Furthermore, contrary to the motion court's finding, it is Delaware, not New York, which has an interest superior to that of all other States in deciding issues concerning directors' conduct of the internal affairs of corporations chartered under Delaware law.[3] While many States other than Delaware may claim some interest in this transaction, none of them, in the context of the derivative claims raised, are in a position to overcome the presumption in favor of the law of the State of incorporation.

Given Delaware's paramount interest in determining whether a Delaware corporation properly purchased securities from a group of its shareholders, including one of its directors, the pendency of virtually identical actions in that jurisdiction and the need for uniformity in the application of the pertinent law to this controversy, the court erred in denying the motion to dismiss on the ground of forum non conveniens.[4] A court may dismiss "where it is determined that the action, although jurisdictionally sound, would be better adjudicated elsewhere". *(Islamic Republic of Iran v Pahlavi,* 62 NY2d 474, 479, *cert*

---

**3.** The motion court emphasized that the payment of the cash consideration was accomplished by a transfer of funds from a GM account to Perot's account in the same New York bank and that GM's directors approved the transaction at a meeting in New York. The wiring of money through a New York bank is not significant for purposes of determining the applicable law with respect to claims of breach of fiduciary duty, and the choice a meeting place is not dispositive lest the shareholders be deprived of the protections afforded by the law of the State of incorporation. Directors could evade their obligations by scheduling a meeting out of State. The court also emphasized that GM has a significant number of individual and institutional shareholders in New York. Such contact is not controlling in determining the appropriate forum to hear a stockholders' derivative action since the corporation is the real party in interest. *(Bader & Bader v Ford,* 66 AD2d 642, *appeal dismissed* 48 NY2d 649.)

**4.** CPLR 327 (a) codifies the common-law doctrine of forum non conveniens as follows: "When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just."

*denied* 469 US 1108; *see also, Irrigation & Indus. Dev. Corp. v Indag,* 37 NY2d 522.) In *Mantei v Creole Petroleum Corp.* (61 AD2d 910), in reasoning equally applicable here, this court affirmed the dismissal of an action alleging fraud, as well as breach of fiduciary duty, against the minority shareholders of a Delaware corporation, holding, "Whether considered under the rubric of 'internal affairs of a foreign corporation' or *'forum non conveniens,'* we think that the action should be pursued, if at all, in the courts of the State of Delaware rather than New York" *(supra,* at 910).

We are aware, of course, that the "internal affairs" rule is, by current legal standards, only one aspect under the general principles of forum non conveniens. *(Koster v Lumbermens Mut. Co.,* 330 US 518, 527; *Broida v Bancroft,* 103 AD2d 88, 91; Restatement [Second] of Conflict of Laws § 84, comment d, at 252.) Among the relevant considerations in forum non conveniens applications are "the burden on the New York courts, the potential hardship to the defendant, and the unavailability of an alternative forum in which plaintiff may bring suit". *(Islamic Republic of Iran v Pahlavi, supra,* 62 NY2d, at 479.) Each of these factors suggests dismissal here, rather than a stay, in deference to the pending Delaware actions in which plaintiff may seek to intervene or any action that he may be advised to institute there.[5] Since derivative actions challenging the same transaction on behalf of the same corporation are being litigated in Delaware, the courts of this State should not be burdened with unnecessarily expending their resources on a duplicative action governed by Delaware law. Furthermore, this action subjects GM and its 20 individual directors to the expense of litigating the same claims in separate forums, as well as exposing them to the possibility of inconsistent judgments as to the ownership of GM's Class E stock and the composition of its board of directors. Plaintiff's counsel has openly admitted that he believes the outcome in New York may well differ from that in Delaware.[6]

---

**5.** Although Perot moved alternatively to dismiss or stay on the basis of the pendency of prior similar actions (CPLR 3211 [a] [4]), not forum non conveniens, he is entitled nonetheless to the benefit of a dismissal on the latter ground since, in this case, essentially the same issues are raised in the presentation of the two arguments.

**6.** Plaintiff's counsel has stated: "I'll be very very candid about my concern. If this case goes to Delaware, based upon our reading of the law in Delaware, there is a chance that the Court might rule that a demand was

Finally, plaintiff has another readily available forum in which to pursue his claim. "Without doubt, the availability of another suitable forum is a most important factor to be considered in ruling on a motion to dismiss" *(supra,* 62 NY2d, at 481). Dismissal of his claim here in favor of the duplicative actions pending in Delaware in which he may intervene or any proceeding he may be disposed to bring there will not impose any undue hardship on plaintiff, a man of substantial resources. Indeed, this court has directed dismissal pursuant to the forum non conveniens doctrine even where a duplicative litigation was not already pending in a foreign court. *(See, e.g., Tanzer v Turbodyne Corp.,* 68 AD2d 614, 621-622; *Bader & Bader v Ford,* 66 AD2d 642, *appeal dismissed* 48 NY2d 649; *Mantei v Creole Petroleum Corp.,* 61 AD2d 910, *supra.)*

We do not reach the respective merits of the alternate grounds for dismissal urged by the GM defendants and Perot since, in light of our dismissal of the action on the ground of forum non conveniens,[7] these are matters more appropriately reserved for the Delaware courts.

Accordingly, the order of the Supreme Court, New York County (Irma Vidal Santaella, J.), entered February 10, 1987, which denied defendants' motions to dismiss or, alternatively, to stay the action should be reversed, on the law and on the facts, and in the exercise of discretion, without costs or disbursements, to the extent of granting the motion to dismiss the action on the ground of forum non conveniens on condition that all defendants stipulate that they will accept service of process in and submit to the jurisdiction of the courts of the State of Delaware in any pending action or action to be there commenced on the causes of action alleged in the amended complaint, and that in any such action defendants will not plead and thereby waive any Statute of Limitations or lack of jurisdiction defense.

---

required under Delaware law * * * I am convinced that if New York law is applied * * * a demand will be ruled as not necessary and futile and therefore excused."

7. Plaintiff's argument that the Delaware court's dismissal of one of the December 4th actions renders the forum non conveniens argument academic is without merit. That litigation is not over until the Delaware plaintiffs exhaust their right of appeal. Moreover, those plaintiffs may, as the Delaware court noted in its opinion, make a demand, which, if rejected, may be asserted as wrongful in another derivative action. That precise claim has already been raised in another action pending in the Delaware Chancery Court.

MURPHY, P. J., Ross, ASCH and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on February 10, 1987, unanimously reversed, on the law and on the facts, and in the exercise of discretion, without costs and without disbursements, to the extent of granting the motion to dismiss the action on the ground of forum non conveniens on condition that all defendants stipulate that they will accept service of process in and submit to the jurisdiction of the courts of the State of Delaware in any pending action or action to be there commenced on the causes of action alleged in the amended complaint, and that in any such action defendants will not plead and thereby waive any Statute of Limitations or lack of jurisdiction defense.