OPINION OF THE COURT
Charles Edward Ramos, J.
*280 In motion sequence No. 001, defendant Ernest E. Stempel moves to stay this action pending the resolution of an action in the United States District Court, Southern District of New York, captioned Starr Intl. Co., Inc. v American Intl. Group, Inc. (federal court action),[1] and alternatively to dismiss the complaint (CPLR 2201, 3211 [a] [7], [8]).
In motion sequence No. 002, defendant John J. Roberts moves to stay this action, and alternatively, to dismiss the complaint (CPLR 327, 2201, 3211 [a] [7]).
In motion sequence No. 003, defendant Houghton Freeman moves to stay this action, and alternatively to dismiss the second and third causes of action (CPLR 2201, 3211 [a] [7]).
In motion sequence Nos. 006 and 008, defendants Maurice R. Greenberg and Howard I. Smith move to stay this action, and alternatively to dismiss the complaint (CPLR 327 [a]; 2201, 3211 [a] [7]).
In motion sequence No. 007, defendant Edward E. Matthews moves to stay this action, and alternatively to dismiss the complaint (CPLR 2201, 3016 [b]; 3211 [a] [1], [7]).
In motion sequence No. 009, defendant L. Michael Murphy moves to stay this action, and alternatively to dismiss (CPLR 2201, 3211 [a] [7]).
Previously, on November 6, 2008, this court denied those portions of the motions that sought a stay of this action, and severed and reserved for subsequent disposition the remainder.
Motion sequence Nos. 001 through 003, and 006 through 009 are herein consolidated for disposition with respect to those portions of the motions that were not addressed in the prior decision (CPLR 327, 3016 [b]; 3211 [a] [1], [7], [8]).
*281 Background[2]
In this action for damages, plaintiff American International Group, Inc. seeks to remedy alleged breaches of fiduciary duty by certain of AIG’s founders, and former officers and directors, for their alleged misappropriation of a special block of AIG shares, worth approximately $20 billion in 2005.
The seven individual defendants are Greenberg, Smith, Matthews, Stempel, Murphy, Roberts and Freeman (collectively, defendants). In addition to serving as AIG’s founders, directors and officers, defendants were all voting shareholders of AIG affiliate and nonparty Starr International Company, Inc.
The genesis of the alleged fiduciary relationship between AIG and defendants is AIG’s formation in 1967 by C.V Starr, as a wholly owned subsidiary of American International Reinsurance Co. (AIRCO). Starr hand-picked nine men, that included defendants Greenberg, Stempel, Roberts and Freeman (control defendants), to be his successors and to direct and control the four principal companies that comprised Starr’s global network of insurance operations, including AIG, SICO, and nonparty C.V Starr & Co.
AIG alleges that Starr’s vision for his insurance organization was that a unique entrepreneurial culture be perpetuated, that included a compensation philosophy that management should have an ownership stake in the business and share in the profits.
In 1970, shortly after Starr’s death, the four main entities of Starr’s network, including AIG and SICO, were reorganized under the direction of Greenberg. As part of the reorganization, most of the insurance operations were transferred to AIG, indirectly through AIRCO, in exchange for AIRCO stock, that was exchanged for AIG common stock when AIRCO merged into AIG. Approximately $130 million worth of AIG stock was transferred to SICO (the shares).
As part of the reorganization, SICO allegedly agreed to continue funding a profit participation and deferred compensation plan to its employees, who became AIG employees in the 1970 reorganization. At this time, the control defendants, as Starr’s hand-picked successors, agreed that the value of the shares would be preserved solely for the benefit of current and *282 future AIG employees and used to fund the incentive compensation plan maintained by SICO, in addition to protecting AIG from a hostile takeover attempt.
As part of this alleged agreement, the control defendants expressly agreed to serve as the fiduciaries of the shares, that represented the wealth created by past generations. As part of this pledge, they allegedly promised that the value of the shares would never be used for the personal enrichment of SICO, or the individual SICO voting shareholders, including the control defendants.
Moreover, in order to fulfill the purposes of the alleged trust and to ensure that defendants’ fiduciary duties to AIG to safeguard the shares were not violated, it was agreed by AIG directors also serving as SICO voting shareholders, that AIG management would always control SICO. Consistently, from October 1970 to March of 2005, AIG officers and directors always comprised the voting shareholders and directors of SICO. Defendants were all officers and directors of AIG and voting shareholders and directors of SICO.[3]
In addition to the control defendants, remaining defendants Smith, Matthews, Murphy, and Freeman, who each became either an AIG officer or director or SICO voting shareholder at a subsequent point in time, each adopted and reaffirmed the pledge to serve as fiduciaries of the value and use of the shares for the benefit of AIG and for future generations of AIG employees.
The shares were placed in a segregated account with restricted access at Chase Manhattan Bank in New York for over 35 years. *283 The shares were withdrawn only to fund AIG’s deferred compensation plan until March of 2005, when AIG, Greenberg and Smith were under investigation by state and federal officials for accounting fraud.
At that time, Greenberg resigned as AIG’s CEO, and Smith was terminated as AIG’s CFO. Greenberg and Smith remained directors of AIG until June of 2005.[4]
On March 28, 2005, AIG alleges that defendants, at Green-berg’s request, seized control of SIGO by causing nine of the AIG executives, then serving as SIGO directors, to be removed from the SIGO board. The following month, Greenberg informed AIG, through Matthews, that SIGO was reneging on the 2005/ 2006 compensation plan, and that there would be no more compensation plans in the future. All of the defendants allegedly participated in this decision.
The defendants then caused SIGO to formally cancel the compensation plan, and announced their intention of selling the shares. Since that time, defendants allegedly caused SIGO to sell portions of the shares, the proceeds of which have allegedly been used to invest in a venture capital and private equity firm. AIG commenced this action in March 2008, asserting three causes of action for breach of fiduciary duty against Greenberg and Smith in their capacity as AIG directors, breach of fiduciary duties against all defendants, and aiding and abetting breach of fiduciary duty against defendants.
Discussion
I. Forum Non Conveniens
Defendants[5] move to dismiss this action on the ground of forum non conveniens. They contend that the internal affairs doctrine and AIG’s improper claim splitting, in addition to other relevant factors, render Delaware the most appropriate forum for this action.
AIG asserts that defendants have not met their heavy burden of demonstrating that New York is an inappropriate forum.
Defendants’ motion to dismiss under the doctrine of forum non conveniens fails for two primary reasons. Defendants offer no persuasive reason why New York is an inconvenient forum *284 for an action involving former directors of a corporation headquartered in New York, several of which are already defending against a pending action here. Additionally, New York is already the forum for another pending, related action. Further, defendants fail to persuade that Delaware, AIG’s state of incorporation, is more convenient than New York, thereby warranting dismissal of the present action in its favor.
The common-law doctrine of forum non conveniens, codified in CPLR 327, permits a court to dismiss an action if it would more properly be heard in another forum. Whether to dismiss in favor of another forum is left to the sound discretion of the court (Shin-Etsu Chem. Co., Ltd. v ICICI Bank Ltd., 9 AD3d 171, 175-176 [1st Dept 2004]).
Although no one factor is controlling, courts should balance factors including the factual nexus between New York and the action, the burden on New York courts, the potential hardship to the defendant of litigating here, the availability of an alternative forum in which the plaintiff may bring suit, and the residency of the parties (Kinder Morgan Energy Partners, L.P v Ace Am. Ins. Co., 55 AD3d 482, 482 [1st Dept 2008]; Kuwaiti Eng’g Group v Consortium of Intl. Consultants, LLC, 50 AD3d 599, 600 [1st Dept 2008]). Ultimately, the plaintiffs choice of forum should not be disturbed unless the balance strongly favors the jurisdiction in which the defendant seeks to litigate the claims (Anagnostou v Stifel, 204 AD2d 61 [1st Dept 1994]).
The complaint alleges facts sufficient to establish a factual nexus between New York and the underlying dispute. Defendants’ allegedly reaffirmed their fiduciary duties to preserve the value of the shares in New York on numerous occasions. The decision to allegedly repudiate these duties and cancel the compensation plans occurred at a meeting attended by defendants in New York. Further, defendants allegedly directed an agent to enter this state to remove the shares from where they have been held for 35 years. Greenberg and Smith allegedly decided to step down as AIG executives as the result of events that occurred in New York, including investigations by the New York Attorney General and the U.S. Securities and Exchange Commission into several transactions entered into during their tenure.
Notably, defendants do not contend that litigating this action here would cause hardship to them. AIG is headquartered in New York, and consequently, key documents and witnesses are located within the state (Georgia-Pacific Corp. v Multimark’s Intl., 265 AD2d 109, 112 [1st Dept 2000]).
*285 Further, three of the defendants, Greenberg, Smith and Matthews, reside or are employed here. The remaining four defendants, Stempel, Murphy, Roberts and Freeman, do not reside in Delaware but in Bermuda, Hawaii and Maryland, respectively.
Moreover, defendants have not established that litigating this action here would burden New York courts. The Commercial Division of this State’s Supreme Court frequently resolves disputes of this nature, and this court is fully capable and frequently called upon to apply Delaware law.
Defendants rely heavily on the fact that AIG is incorporated in Delaware, and the so-called internal affairs doctrine as the primary factor that renders Delaware the most suitable forum for this action.
Generally, issues concerning the internal affairs of a corporation and the conduct of its directors are governed by the laws of the state of incorporation (Hart v General Motors Corp., 129 AD2d 179, 182 [1st Dept 1987], lv denied 70 NY2d 608 [1987]). Although the state of incorporation undoubtedly has an interest in the outcome of such actions, incorporation in a foreign state, does not, by itself, necessitate dismissal in favor of another forum (see Broida v Bancroft, 103 AD2d 88, 90-91 [2d Dept 1984]; Matter of Topps Co., Inc. Shareholders Litig., 19 Misc 3d 1103[A], 2007 NY Slip Op 52543[U], *4-5 [Sup Ct, NY County 2007]; Berger v Scharf, 11 Misc 3d 1072[A], 2006 NY Slip Op 50519[U], *2 [Sup Ct, NY County 2006]; Restatement [Second] of Conflict of Laws § 84, Comment d).
Rather, a New York court may properly retain jurisdiction over an action involving the internal affairs of a foreign corporation if a majority of other factors indicate that New York is an appropriate forum (accord Broida, 103 AD2d at 90-91; Restatement [Second] of Conflict of Laws § 313, Comment c).
A foreign state of incorporation generally weighs heavier in favor of dismissal on the ground of forum non conveniens where related actions are already being litigated in that state (see e.g. Carroll v Weill, 2 AD3d 152, 152 [1st Dept 2003], lv denied 2 NY3d 704 [2004]; Sturman v Singer, 213 AD2d 324, 325 [1st Dept 1995]; see also Hart v General Motors Corp., 129 AD2d 179 [1987] [dismissal in favor of Delaware, the state of incorporation, was proper where multiple and virtually identical actions were already pending there]).
The court already determined that a number of relevant factors indicate that New York is an appropriate forum. Further, *286 there is no related action pending in Delaware.[6] As indicated above, there is an action pending in the U.S. District Court, Southern District of New York against SICO, the federal court action, that involves similar factual issues present here, making it likely that discovery exchanged in that action is located in New York and will be relevant to this action (Rostuca Holdings v Polo, 246 AD2d 475, 475 [1st Dept 1998]).
Defendants additionally argue that AIG has engaged in improper claim splitting that weighs in favor of forum non conveniens dismissal, because it should have brought the causes of action asserted here in the Delaware derivative action.
However, the doctrine against claim splitting does not apply, because the causes of action in the Delaware derivative action do not arise out of the same transaction or series of transactions at issue in this action (Barrett v Delma Props., Inc., 35 AD3d 279, 279 [1st Dept 2006]; Brown v Lockwood, 76 AD2d 721, 739-740 [2d Dept 1980]).
In the Delaware derivative action, AIG is challenging Green-berg’s and Smith’s alleged involvement in accounting improprieties that ultimately led to their departure from AIG. The conduct at issue here is the defendants’ alleged failure to safeguard the shares, and improper cancellation of AIG’s compensation plans, that occurred subsequent to Greenberg’s and Smith’s resignation as AIG executives.
Therefore, because defendants failed to demonstrate private and public interest factors that militate against retaining New York as the forum to litigate this action, the motions to dismiss on the ground of forum non conveniens are denied.
II. Breach of Fiduciary Duty Against Greenberg and Smith
Defendants Greenberg and Smith move to dismiss this cause of action on the ground they no longer owed fiduciary duties to AIG at the time that the alleged conduct took place, subsequent to their resignation as directors in June of 2005. Further, they assert that their rights and powers as directors and voting shareholders of SICO were separate and independent from their status as AIG directors, and that they had no fi *287 duciary duty to require SIGO to use the shares to benefit AIG or to populate SICO’s board with AIG management. Finally, they reassert their argument, offered unpersuasively in support of their motions for a stay of this action, that the relief that AIG seeks is entirely dependent on the outcome of the federal court action.
AIG maintains that it has sufficiently alleged that while Greenberg and Smith were directors of AIG, they breached their fiduciary duties of loyalty and good faith by causing and participating in the removal of AIG managers from the SIGO board, cancelling AIG’s deferred compensation programs, repudiating their commitment to safeguard the shares, and diverting and misusing the shares for their own enrichment.
As directors, Greenberg and Smith undoubtedly owed fiduciary duties of care, loyalty and good faith to AIG[7] (Mills Acquisition Co. v Macmillan, Inc., 559 A2d 1261, 1280 [Del 1989]). In discharging this duty, Greenberg and Smith were not permitted to use their position of trust and confidence to further their own private interests (id.). Further, they were charged with affirmatively protecting and defending those interests entrusted to them (id.).
The complaint details AIG’s long-standing policy of preserving its core assets, including the shares, in order to fund an incentive-based compensation program for current and future AIG employees and to protect it from hostile takeover attempts (complaint 1i 62).
Moreover, the complaint details numerous occasions during their tenure as AIG directors whereupon Greenberg and Smith acknowledged, expressly and by actions, their commitment to adhere to AIG’s corporate policy of preserving the use and protecting the value of the shares (complaint ITU 37-39, 41-42, 59-63).
For instance, Greenberg declared in separate speeches given in 1996 and 2000 that “no one group of individuals can ever raid it [the shares],” and that “we put these shares in trust and that trust cannot be broken by anybody” (complaint 1i 41). In 1998, Greenberg allegedly stated to a reporter for Fortune magazine that, because the value of the shares had been created by “past generations,” it was determined in 1970 that the shares “should not be used to enrich the then shareholders of SIGO, *288 but should instead be held by them as fiduciaries for future generations of AIG management” (id. 1i 61).
Finally, AIG has pleaded particularized facts stating that Greenberg and Smith breached their fiduciary duties of loyalty while serving as AIG directors by intentionally disregarding AIG’s corporate policy of perpetuating a compensation policy for the benefit of its employees funded by the value of the shares, by cancelling the compensation plans, and by placing their own and SICO’s financial interests above AIG’s by diverting the value of the shares.
The court rejects Greenberg’s and Smith’s argument, echoed by the other defendants, that their service as directors and voting shareholders of SIGO were separate and independent from their service as AIG directors. The duty of loyalty is broad and encompassing, and is not diluted simply because a director acts in a dual capacity as director of another corporation at the same time (Zaucha v Brody, 1997 WL 305841, *3, 1997 Del Ch LEXIS 81, *8 [1997], affd 697 A2d 749 [Del 1997]; Cede & Co. v Technicolor, Inc., 634 A2d 345, 361 [Del 1993], on rearg mod on other grounds 636 A2d 956 [Del 1994]; Weinberger v UOP, Inc., 457 A2d 701, 710 [Del 1983]).
Individuals who act in a dual capacity as directors of two corporations owe the same duty of good management to both corporations, and this duty is to be exercised in light of what is best for both companies (id.). Consequently, Greenberg and Smith were not entitled to disregard their fiduciary duties of loyalty to AIG merely because they also held positions at SIGO.
Finally, the exact course of conduct that must be charted to properly discharge a director’s fiduciary duty necessarily changes in the specific context of the action that the director is taking (Quickturn Design Sys., Inc. v Shapiro, 721 A2d 1281, 1292 [Del 1998]). Ultimately, whether Greenberg and Smith properly discharged their duties of loyalty to AIG while simultaneously serving as SIGO directors will require a fact-intensive assessment of their conduct, not properly disposed of at the pre-answer stage.
For these reasons, AIG has sufficiently alleged a cause of action for breach of fiduciary duty against its former directors, Greenberg and Smith.
III. Breach of Fiduciary Duty Against All Defendants
AIG’s second cause of action is for breach of fiduciary duty against all defendants, premised on allegations that AIG reposed *289 trust and confidence in them individually over a lengthy period of time that gave rise to a fiduciary duty with respect to the use and preservation of the shares. Further, AIG alleges that the existence of this duty is evidenced by the express pledges and commitments to protect the shares that defendants made, in addition to their actions and intentions in structuring the 1970 reorganization, and their conduct in preserving the shares from 1970 to 2005.
Defendants assert that AIG fails to allege that they owed AIG fiduciary duties in their capacities as SICO’s directors and voting shareholders, and that they did not owe a duty to cause SIGO to use the shares for AIG’s benefit. Defendants additionally assert that under New York law, AIG fails to plead facts of the existence of a fiduciary duty to satisfy the heightened pleading standards of CPLR 3016 (b).[8]
In the absence of a formal fiduciary relationship, a plaintiff must allege special circumstances or other peculiar facts that effectively transformed the parties’ relationship into a fiduciary one (L. Magarian & Co. v Timberland Co., 245 AD2d 69, 69-70 [1st Dept 1997]; Apple Records v Capitol Records, 137 AD2d 50, 57-58 [1st Dept 1988]; see also EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19-22 [2005]). For these reasons, whether a fiduciary relationship exists is fact-specific to the particular action (EBC I, Inc. at 19; Wiener v Lazard Freres & Co., 241 AD2d 114 [1st Dept 1998]).
*290 Courts weigh the substance of the parties’ relationship, including the closeness and ongoing nature of the contacts (see e.g. Universal-MCA Music Publ. v Bad Boy Entertainment, Inc., 2003 NY Slip Op 51037[U], *10-11 [Sup Ct, NY County 2003]). Additionally, whether the plaintiff reposed special trust or confidence in the defendant, or whether the defendant is in a position of dominance over the plaintiff are relevant (id.; Sergeants Benevolent Assn. Annuity Fund v Renck, 19 AD3d 107, 110 [1st Dept 2005]; Apple Records, 137 AD2d at 57-58).
The relationship between AIG and the control defendants dates back to the formation of AIG itself, when its founder, Starr, hand-picked them to be his successors in directing and controlling the four entities in his network, that included AIG and SICO. The control defendants allegedly engineered the transfer of the shares from AIG to SICO. AIG allegedly trusted these defendants to safeguard the shares, in order to fund an equity based compensation program for AIG and to protect it from a hostile takeover, in order to perpetuate Starr’s vision. At that time, the control defendants allegedly pledged their fidelity to safeguard the shares, and never use them for their own or SICO’s enrichment, despite, occupying, at times, positions as SICO management and voting shareholders. This pledge was allegedly repeated and reaffirmed by the control defendants throughout their terms as members of the AIG network, both as members of AIG and SICO management, and as SICO voting shareholders.
AIG allegedly reposed trust in the remaining defendants, Smith, Matthews, and Murphy, to adhere to the same pledge originally made by the control defendants with respect to the shares. Each allegedly adopted and reaffirmed the pledge to act as fiduciaries of the shares in order to protect and preserve them for the benefit of AIG. AIG points to the statement of commitment evidencing this pledge that was signed by Green-berg, Stempel and Matthews in 1992. The statement of commitment describes their understanding and acknowledgment of the “unique entrepreneurial culture” of the AIG network, the special history of AIG and SICO, and their commitment to the policies that were successful to AIG’s growth, including an incentive-based compensation system (exhibit 1, at 2, 4, annexed to aff of Jeffrey Glekel, Esq.). The statement of commitment further states,
“The voting shareholders of SICO and C.V Starr & Co., as part of the earlier plan proposed by [defen *291 dant] M.R Greenberg . . . in an extraordinary decision, decided that the large capital value of AIG held by SICO [the shares] . . . should not be used to enrich the then shareholders but instead preserved to provide incentives for succeeding generations to continue the growth of AIG. Thus, the series of SICO Deferred Compensation Profit Participation Plans were created” (id. at 2).
Furthermore, AIG sufficiently alleges that defendants breached that fiduciary duty to protect and preserve the shares, by causing SICO to cancel the compensation plans funded by the shares, and by dissipating a large portion of the shares to make investments in various investment activities around the globe for SICO’s benefit.
Factual issues concerning the precise nature and scope of the relationship and the length of time that it spanned undoubtedly must be explored. However, accepting the complaint’s allegations as true, as the court must do at this stage, AIG has stated in sufficient detail a cause of action for breach of fiduciary duty against defendants to survive the pleading stage. Defendants’ reliance upon Collins v Beinecke (67 NY2d 479 [1986]) is unpersuasive because it is distinguishable in several material ways. Collins was an action to remove the directors of a type B not-for-profit foundation, who were also the officers and directors of the foundation’s creator corporation from which the foundation received its sole financial support. When another corporation purchased all of the stock of the creator corporation, the directors of the foundation refused to resign from the foundation’s board or to second the nomination for membership of directors associated with the acquirer.
Thus, the issue in Collins (supra) was whether the acquisition of the creator corporation required the foundation’s directors to resign in favor of installing representatives of the creator corporation in their stead.
The Court denied declaratory and injunctive relief to compel the removal of the directors, finding that in the absence of any specific limitations in the foundation’s certificate of incorporation, the bylaws and other written instruments that required the foundation to limit membership in the foundation to persons affiliated with the company, that the customs and past practices of the corporation and the foundation alone were not enough to *292 impose a fiduciary duty upon the directors of the foundation to resign or install representatives of the creator corporation.[9]
Unlike in Collins, AIG is not seeking the removal of members of SICO’s board, or to otherwise obtain a declaration as to SICO’s corporate objective vis-á-vis AIG with respect to the composition of SICO’s board. Nor is AIG relying solely on the customs and past practices as between AIG and SIGO to establish that a fiduciary duty arose as between AIG and the individual defendants.
While the nature of the relationship between SIGO and AIG, and the extent of the duties that exist between them, if any, are potentially relevant to the issues raised in this action, they are not dispositive of the issues before this court. However, to the extent that AIG is alleging damage stemming, in part, from the change in composition of the SIGO board based upon an alleged policy between AIG and SIGO, this claim cannot form the basis of a fiduciary duty on the part of the individual defendants (Collins., 67 NY2d at 483).
Nonetheless, to the extent that AIG is seeking to recover damages for alleged breach of fiduciary duty by the individual defendants based upon their alleged participation in the cancellation of a compensation policy and subsequent misappropriation of the shares that they pledged to safeguard during an enduring and special relationship, the pleadings sufficiently state a cause of action for breach of fiduciary duty against defendants. Consequently, defendants’ motions to dismiss the second cause of action are denied.
IV Aiding and Abetting Breach of Fiduciary Duty
Defendants move to dismiss the cause of action for aiding and abetting breach of fiduciary duty on the ground that, under Delaware law, only a nonfiduciary may be subject to such a cause of action.
Defendants are correct in asserting that the third element of a cause of action for aiding and abetting breach of fiduciary *293 duty requires the aider and abettor to be a nonfiduciary. Further, to the extent that AIG asserts that defendants were themselves fiduciaries, it cannot also maintain that they were nonfiduciaries aiding and abetting a fiduciary’s breach of duty. However, the CPLR permits a cause of action to be pleaded in the alternative (CPLR 3014, 3017). Consequently, AIG is permitted to plead this cause of action in the alternative at this stage of the action, provided it has met the other elements.
To state a cause of action for aiding and abetting a breach of fiduciary duty, a plaintiff must plead the existence of a fiduciary duty, a breach of the fiduciary’s duty, and a knowing participation in the breach by the nonfiduciary defendant[10] (In re Santa Fe Pac. Corp. Shareholder Litig., 669 A2d 59, 72 [Del 1995]). Although “knowing participation” does not have to be pleaded with particularity, a plaintiff must allege facts establishing either that defendants conspired with the director to breach a fiduciary duty, or otherwise, some factual basis from which knowing participation can be inferred (McGowan v Ferro, 2002 WL 77712, *2, 2002 Del Ch LEXIS 3, *6-7 [2002]).
Assuming arguendo that a breach of duty on the part of Greenberg is established, the complaint sets forth allegations with sufficient detail to infer that the defendants played an active role in Greenberg’s alleged breach. AIG alleges a lengthy and enduring relationship with defendants as members of the AIG network, who served as AIG, SIGO and C.V Starr officers and directors, in addition to being SIGO voting shareholders. Further, AIG alleges that during this relationship, defendants repeatedly acknowledged their familiarity with AIG’s policy regarding the special use and preservation of the shares. It is inferable that defendants were aware that Greenberg’s conduct, in allegedly causing the cancellation of the deferred compensation plan funded by the shares and the subsequent misappropriation of the shares for his own or SICO’s benefit, was improper. Moreover, the complaint states that defendants participated in the alleged breaching conduct insofar as they consented to and approved Greenberg’s actions with respect to the shares.
Any allegation that the action taken by the fiduciary was “per se illegal” undoubtedly renders more compelling the inference that the aiders and abettors participated in the breach (Rand v Western Airlines, Inc., 1989 WL 104933, *5, 1989 Del *294 Ch LEXIS 118, *8-9 [1989]). However, this allegation is not required, particularly, where as here, AIG alleges that defendants were direct and integral participants of the wrongful conduct at issue.
Consequently, AIG has sufficiently stated a cause of action for aiding and abetting breach of fiduciary duty to survive the pleading stage.
V Lack of Personal Jurisdiction
Defendants Stempel and Murphy assert that AIG did not properly serve them under the requirements of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (20 UST 361, TIAS No. 6638 [1969]) (Hague Convention). Stempel and Murphy contend that it was improper for AIG to personally serve them through a private process server in Bermuda, where they both reside, because Bermuda’s reservation to the Hague Convention does not permit such service. Rather, they contend that AIG was required to attempt service by utilizing Bermuda’s Central Authority.
Articles 2 through 5 of the Hague Convention provide that a contracting state may designate a central authority through which service may be made in that country. Article 10 of the Hague Convention permits alternate forms of service, including direct service of process, in the absence of any objection by the state of destination.[11]
Bermuda is a signatory to the Hague Convention. The United Kingdom, on behalf of Bermuda, took a limited reservation with regard to paragraphs (b) and (c) of article 10, as follows: “documents for service through official channels will be accepted in the United Kingdom only by the Central or additional authorities and only from judicial, consular or diplomatic officers of other Contracting States” (Hague Conference on Private International Law, http://www.hcch.net/ *295 index_en.php?act=authorities.details&aid=278 [accessed Feb. 10, 2008]).
Bermuda’s limited reservation to article 10 does not constitute an objection to service by alternate means as set forth in that article, and applies to service “through official channels” only. Because AIG attempted to effect service “directly through ... [a] competent person[ ] of the State of destination,” e.g. by private process server in Bermuda, it was not required to attempt to effect service “through official channels,” e.g. Bermuda’s Central Authority, in order to serve Stempel and Murphy (accord In re American Intl. Group, Inc. Sec. Litig., 240 FRD 608, 609 [SD NY 2007]; accord Koehler v Dodwell, 152 F3d 304, 307 [4th Cir 1998]).
The United Kingdom’s clarification of its reservation of article 10 confirms this court’s interpretation. In a September 11, 1980 letter to the Permanent Bureau of the Hague Convention, the Foreign and Commonwealth Office of the United Kingdom stated,
“I am happy to confirm that our declaration [reservation] does not preclude any person in another Contracting State who is interested in a judicial proceeding (including his lawyer) from effecting service in the United Kingdom ‘directly’ through a competent person other than a judicial officer or official, e.g., a solicitor” (Hague Conference on Private International Law, http://www.hcch.net/ index_en.php?act=authorities.details&aid=278 [accessed Feb. 10, 2008] [emphasis added]).
In other words, Bermuda’s reservation affects service “through official channels” only. It does not otherwise interfere with the alternate forms of service set forth in article 10 of the Hague Convention, including direct service through a competent person of the state of destination, as AIG utilized here by retaining a private process server.
Marcus v Five J Jewelers Precious Metals Indus. Ltd. (2002 NY Slip Op 50269[U] [Sup Ct, NY County 2002]), upon which Stempel and Murphy rely to demonstrate that Bermuda only permits service through the Central Authority, is inapposite. At issue there was Israel’s reservation to paragraphs (b) and (c) of article 10. Israel signed a treaty that stated that in the event that it is the state of destination within the meaning of the Hague Convention, it permits “service of judicial documents only through the Directorate of Courts” (2002 NY Slip Op 50269[U], *6; Hague Conference on Private International Law, *296 http://www.hcch.net/index_en.php?act=authorities.details&aid =260 [accessed Feb. 10, 2008]). The preamble “only through” before the term “Directorate of Courts” in Israel’s reservation to article 10 clearly establishes that service through the Directorate of Courts is mandatory, thereby precluding service by alternate means in that country.
However, Bermuda’s reservation contains mandatory language only with respect to “service through official channels,” while containing no reference to the permissibility of alternate means of service set forth in article 10. Thus, the only logical interpretation of the text is that the reservation does not affect direct service through a competent person, as confirmed by the United Kingdom’s clarification.
Accordingly, AIG’s service upon Stempel and Murphy directly through a private process server in Bermuda was effective under the Hague Convention.
Accordingly, it is ordered that defendants’ motion sequence Nos. 001, 002, 003, 006, 007, 008 and 009 are denied.

. In the federal court action, commenced in July of 2005, American International Group, Inc. (AIG) asserted claims for, inter alia, breach of contract and breach of fiduciary duty. In that action, AIG alleged that Starr International Company, Inc. (SICO) and AIG entered into an oral contract and fiduciary relationship pursuant to which SICO was obligated to hold the shares in trust for the benefit of current and future AIG employees. In June of 2008, Judge Jones granted SICO’s motion for summary judgment with respect to the cause of action for breach of contract, and denied the motion with respect to causes of action for breach of fiduciary duty, conversion and declaratory judgment (exhibit A, annexed to supp aff of Christopher Duffey, Esq., at 51).

. The allegations set forth in this section are taken from the complaint, unless otherwise noted, and are assumed to be true for the purposes of this decision.

. Greenberg served as the chief executive officer (CEO) and director of AIG and C.V Starr from 1967 to 2005, and as a voting shareholder and executive of SICO since 1970. Smith served as director, executive and chief financial officer (CFO) of AIG from 1996 to 2005, as a director and voting shareholder of SICO since 1996, and as a director of C.V Starr since 2000. Matthews was a director of AIG between 1973 to 1989, and among other positions, was honorary director of AIG since 2002, a director and voting shareholder of SICO since 1973, and a director and current president of C.V Starr since 1973. Stempel was a director of AIG from 1967 to 1995 and an honorary president of AIG since 1996, president of AIRCO until 1978, was reappointed to SICO’s board in 2005, and a former director of C.V Starr. Murphy was a director of various AIG subsidiaries from 1972 to 2005, and a director and voting shareholder of SICO since 1985. Roberts served as director of AIG from 1967 to 1996, as voting shareholder and director of SICO from 1970 to 2000, was reappointed to the SICO board in 2000, and was a director of C.V Starr. Freeman was a director of AIG from 1967 to 1995, a SICO director and voting shareholder from 1971 to 2000, and was reappointed to the SICO board in 2005, in addition to serving as a director of C.V Starr.

. Defendants Greenberg and Smith dispute this time line, arguing instead that they resigned completely from AIG in March 2005.

. Defendants submit separate briefs but adopt one another’s arguments in support of dismissal.

. There is a shareholder derivative action (Delaware derivative action) pending against Greenberg and Smith in the Delaware Chancery Court, that arises out of unrelated transactions that are not at issue in this action, namely, their alleged involvement in accounting improprieties in several large reinsurance transactions. These transactions are also the subject of an action brought by the Attorney General of the State of New York, that is currently pending before this court. The Delaware derivative action is currently stayed.

. To the extent that AIG is challenging the conduct of its directors, Delaware, the state of incorporation, is applicable {Hart, 129 AD2d 179 [1987]).

. Defendants additionally assert that, to the extent that AIG alleges that defendants breached duties in their capacities as directors, under Delaware law, former directors do not owe fiduciary duties to corporations. However, AIG’s second cause of action is not premised upon defendants’ positions as AIG directors and does not otherwise concern the internal affairs of AIG. Rather, it is based upon the special circumstances of the parties’ relationship that allegedly gave rise to a fiduciary duty (see AIG’s mem of law at 27 [“Though AIG has certainly alleged that defendants were all officers and directors for most of three decades, Count Two is not grounded in that fact. Rather, as clearly alleged, it was by virtue of their positions of leadership and trust . . . that defendants occupied positions at SIGO and pledged to serve as fiduciaries . . . for the benefit of AIG”]).
Consequently, the court disregards this aspect of defendants’ argument that supports dismissal of the second cause of action under Delaware law. Otherwise, defendants and AIG assume that New York substantive law applies to AIG’s cause of action premised upon factual allegations that a duty arose by virtue of the special circumstances of the parties’ lengthy relationship. Because the parties have impliedly consented by their conduct, the court will apply New York law to the second cause of action (United Feature Syndicate, Inc. v Miller Features Syndicate, Inc., 216 F Supp 2d 198, 214 [SD NY 2002]).

. In support of its conclusion that customs and past practices of the corporation and the foundation were not enough to impose a fiduciary duty upon the directors of the foundation to resign, the Court of Appeals cited to Matter of Rye Psychiatric Hosp. Ctr. (66 NY2d 333 [1985]; Collins, 67 NY2d at 483). There, an issue of first impression was presented, namely whether the Business Corporation Law permits the number of directors constituting a corporate board to be determined by custom or past practice when there is no governing provision in the bylaws (Matter of Rye Psychiatric Hosp. Ctr., 66 NY2d 333 [1985]).

. All parties agree that Delaware law applies to the substantive cause of action for aiding and abetting breach of fiduciary duty.

. The text of article 10 of the Hague Convention states that, provided a country does not object, the requirements of the Convention will not interfere with,
“(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
“(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.”