(November 17, 1987)

■ UNITED STATES AVIATION UNDERWRITERS, INC., Appellant, v UNITED STATES FIRE INSURANCE COMPANY, Respondent.— Order, Supreme Court, New York County (William McCooe, J.), entered on or about April 7, 1987, affirmed, for the reasons stated by William McCooe, J., without costs and without disbursements. Concur—Murphy, P. J., Kupferman, Milonas and Smith, JJ.

Sullivan, J., dissents in a memorandum as follows: This is an appeal from the grant of a motion to dismiss on the ground of forum non conveniens.

United States Aviation Underwriters, Inc. (USAU), a New York corporation having, since its formation in 1928, its principal place of business in New York City, commenced this action for and on behalf of the United States Aircraft Insurance Group, a group which collectively underwrites aviation-related insurance and for which it acts as manager, against United States Fire Insurance Company (U.S. Fire), also incorporated in New York. USAU seeks a declaration that U.S. Fire, by its wrongful acts and omissions, breached certain duties owed by it as a primary insurance carrier to USAU, the excess insurer. As alleged in the complaint, the essence of U.S. Fire's breach was its settling of certain litigation for less than its primary limits while nonetheless agreeing with its claimants that those limits were exhausted. This settlement was reached, according to USAU, without notice to it or the opportunity to participate therein. As a consequence, USAU claims, it has been subjected to extensive declaratory judgment litigation in Texas in which it faces a potential exposure of over $20 million.

The underlying facts are not in dispute. On September 1, 1983, a Beech Baron aircraft owned by Power Pak Co., Inc. and operated by Olympia Wings, Inc., both Texas corporations,

crashed near Houston, Texas, resulting in the deaths of the pilot and the sole passenger, who were residents of Texas.

At the time, Power Pak was the named insured on a $5 million hull and liability insurance policy issued by U.S. Fire covering the Beech Baron. Having initially denied coverage on the ground that the aircraft had not been properly inspected, U.S. Fire sought to vindicate its disclaimer by instituting a declaratory judgment action against Power Pak in Texas. Olympia Wings was the named insured under a $20 million aircraft hull and liability insurance policy issued by USAU. Although the designated aircraft insured under the USAU policy was a Merlin, Olympia claimed coverage for the Beech Baron under the policy's "substitute aircraft" provision, since, according to Olympia, the Merlin was undergoing repairs at the time of the accident. On the basis of this representation, USAU undertook to defend Olympia against the claims of the passenger's survivors. When USAU later learned that the representation was false, it advised Olympia that it would continue to furnish a defense, but under a reservation of rights. The USAU policy provided that in the event the "substitute aircraft" clause was invoked, its coverage was to be excess.

In accordance with Texas law, Olympia rejected USAU's offer of a qualified defense. In case of such rejection, the insurer must either affirm the policy and unqualifiedly defend the insured or withdraw its defense and assume the risk that its denial of coverage will not be judicially sustained. If the insurer selects the latter option, the insured is free to assume control of its own defense and to enter into a settlement without obtaining the insurer's consent. *(See, Rhodes v Chicago Ins. Co.,* 719 F2d 116, 120.) In any event, USAU thereupon commenced its own declaratory judgment action in a Texas Federal court testing the validity of its disclaimer.

In all, six separate lawsuits relating to the accident, including the aforementioned action against Olympia for the death of the deceased passenger, namely, the *Marney* action, were commenced in Texas. Eventually, the *Marney* action was settled for $25 million and a consent judgment, approved by the Texas State court, entered. The parties also agreed that execution of the consent judgment would be limited to the proceeds of the insurance policies of U.S. Fire and USAU. Thereafter, U.S. Fire, without notifying USAU or affording it the opportunity to participate, settled the *Marney* wrongful

death action and its litigation with its insureds for $3.425 million. The settlement provided that U.S. Fire's payment of the $3.425 million would exhaust its $5 million primary policy limit and reduce the *Marney* consent judgment from $25 million to $20 million. As part of the settlement, the plaintiffs in that action agreed to indemnify U.S. Fire with respect to any further actions, such as this one, arising out of the insurance coverage aspects of the accident.

USAU alleges that, if U.S. Fire had not artificially exhausted its $5 million policy limit or had it requested USAU to participate in its settlement discussions in Texas, exposure of USAU's own policy limits "could have been avoided or significantly reduced and [it] could have resolved the USAU coverage action." USAU seeks a declaration that U.S. Fire's failure to invite it to participate in and/or contribute to the settlement constituted a breach of duty owed by a primary carrier to an excess insurer. USAU seeks a further declaration that U.S. Fire must indemnify and reimburse it for any future liability which might be imposed upon it as a result of its currently pending coverage action in the Texas Federal court.

The motion court granted U.S. Fire's forum non conveniens motion and dismissed the complaint, finding that the action lacked "a substantial nexus with New York." In deciding that Texas was the more convenient forum, the court cited the issuance of the two policies to Texas residents, the occurrence of the underlying accident in Texas and the pendency there of the various actions which are an outgrowth thereof, the Texas residences of the majority of witnesses to the settlement procedures, and, finally, the conclusion that Texas law should apply. Little or no significance was given to the fact that both USAU and U.S. Fire are incorporated in New York, since they "are national insurance companies with branch offices in Texas." In my view, the court's analysis failed to make the appropriate distinction between the instant lawsuit and the Texas litigation and, thus, erroneously focused on the situs of the accident and the policies' issuance and the residence of the insureds and the accident victims, facts which have little or nothing to do with the issues presented herein. Since U.S. Fire has failed to overcome the favorable presumption generally accorded a plaintiff's choice of forum, I would reverse and deny the motion to dismiss.

Forum non conveniens is a judicially developed doctrine,

now codified in CPLR 327 (a),[1] based, in large measure, on public policy considerations *(see, Bata v Bata,* 304 NY 51, 56; *Robinson v Oceanic Steam Nav. Co.,* 112 NY 315, 323-324) which recognize that "our courts should not be under any compulsion to add to their heavy burdens by accepting jurisdiction of a cause of action having no substantial nexus with New York." *(Silver v Great Am. Ins. Co.,* 29 NY2d 356, 361.) It is a flexible doctrine and whether the facts and circumstances of a particular case warrant dismissal is a matter left to the sound discretion of the court, subject, of course, to appellate review. *(Islamic Republic v Pahlavi,* 62 NY2d 474, 478, 479, *cert denied* 469 US 1108; *Blais v Deyo,* 92 AD2d 998, *affd* 60 NY2d 679.)* The factors to be considered in the exercise of forum non conveniens discretion include not only the burden imposed on New York courts but also the potential hardship to the defendant in litigating the action in New York, the availability of an alternative forum, the residence of the parties and the place of occurrence of the events out of which the action arose *(Islamic Republic v Pahlavi, supra,* 62 NY2d, at 479), as well as, to a lesser extent, the choice of law to be applied to the matter in dispute *(see, Hart v General Motors Corp.,* 129 AD2d 179; *see also, VSL Corp. v Dunes Hotel & Casinos,* 128 AD2d 23, 26).

Although the Court of Appeals in 1972 relaxed the prior rule that an action could not be dismissed if one of the parties was a New York resident *(Silver v Great Am. Ins. Co., supra,* 29 NY2d 356), it by no means abandoned the emphasis on New York residence as an important factor in any forum non conveniens analysis. *(Supra,* at 361; *Sullivan v McNicholas Transfer Co.,* 93 AD2d 527.) Indeed, the plaintiff's New York residence " 'should generally be the most significant factor in the equation' " *(supra,* at 531, quoting McLaughlin, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, 1982-1983 Pocket Part, CPLR C301:4, at 11). It may well be the dispositive factor. *(See, Nevader v Deyo,* 111 AD2d 548, 550.)* Since a plaintiff's residence continues as the most significant factor, the courts recognize a strong legal presumption in favor of leaving a resident plaintiff's choice of the New York forum undisturbed. This presumption imposes a

---

1. CPLR 327 (a) provides as follows: "When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action."

heavy burden on a defendant to prove that the balance tips strongly in its own favor. *(Olympic Corp. v Societe Generale,* 462 F2d 376.)* Thus, a New York resident plaintiff will not be deprived of its home forum unless "it plainly appears that New York is an inconvenient forum and that another is available which will best serve the ends of justice and the convenience of the parties." *(Silver v Great Am. Ins. Co., supra,* 29 NY2d, at 361; *see, O'Connor v Bonanza Intl.,* 129 AD2d 569.) U.S. Fire has wholly failed to sustain its burden in this regard. The affidavits of its defense counsel contain unexplained and unfounded conclusory assertions about inconvenience or prejudice and are patently insufficient.

U.S. Fire never provided, as did USAU, a clear explanation in appropriate evidentiary form as to precisely which witnesses would be unavailable or inconvenienced if the action proceeded in New York. Even if it had, the long-standing rule is that the foreign location of some of the defendant's witnesses or documents is not a sufficient basis for a forum non conveniens dismissal. *(See, Sullivan v McNicholas Transfer Co., supra,* 93 AD2d, at 532-533; *Slaughter v Waters,* 41 AD2d 810.) In any event, such circumstance hardly outweighs the fact that USAU's key witnesses and documents are located here. Significantly, USAU has also shown that two of these witnesses are no longer in its employ and thus cannot be compelled to appear in Texas to testify.[2] Where, as here, both parties are New York residents, the defendant alleging inconvenience has consistently and repeatedly used the New York courts as a plaintiff,[3] and the plaintiff has submitted sworn proof that its key witnesses, some of whom would not be amenable to compulsory process elsewhere, are located in this State, it is clear that New York is not an inconvenient forum.

Moreover, and wholly apart from and in addition to the New York residence of the parties and the prejudice and inconvenience to USAU if it is deprived of its home forum, this is not a case without a substantial nexus to New York.

2. Not only did the motion court ignore this critical fact, but it incorrectly found that USAU would not be burdened by litigating in Texas because it maintains a branch office in Dallas. The record fails to disclose that any witness from USAU's Dallas office will provide relevant testimony concerning the issues in this lawsuit.

3. From 1971 to the present, U.S. Fire commenced over 150 State and Federal actions in New York County alone. As an active litigant in New York courts, it "ill behooves" U.S. Fire to urge that New York is not a convenient forum to litigate this action. *(Broida v Bancroft,* 103 AD2d 88, 92-93.)

New York has a well-established interest in regulating the activities of its resident insurers *(see, Matter of Washington Post Co. v New York State Ins. Dept.,* 61 NY2d 557, 565; *Health Ins. Assn. v Harnett,* 44 NY2d 302, 308-309; *People v Formosa,* 131 NY 478; 29 NY Jur, Insurance, §§ 73-75, at 68-69 [1963 ed]), including the manner in which they conduct the defense and settlement of litigation. Its courts have taken a leading role in ensuring that the duties of good faith and fair dealing between a primary and excess carrier are observed. *(See, e.g., St. Paul Fire & Mar. Ins. Co. v United States Fid. & Guar. Co.,* 56 AD2d 546, *affd* 43 NY2d 977; *Hartford Acc. & Indem. Co. v Michigan Mut. Ins. Co.,* 93 AD2d 337, *affd* 61 NY2d 569.) Given such an interest and taking into account that both parties are New York resident insurers, it is clear, irrespective of whether New York or Texas law would be applicable to this controversy under New York's choice of law interest analysis test *(see, Babcock v Jackson,* 12 NY2d 473; *see also, Schultz v Boy Scouts,* 65 NY2d 189, 201; *Neumeier v Kuehner,* 31 NY2d 121; *Miller v Miller,* 22 NY2d 12), that the matter is hardly one that can be characterized as "imported litigation" *(see, Laurenzano v Goldman,* 96 AD2d 852, 853; *see also, Broida v Bancroft,* 103 AD2d 88, 92). If, indeed, Texas law is to be applied to this controversy, our courts, with the guidance of counsel, are quite capable of meeting that responsibility.

Finally, it should be noted that USAU's Texas declaratory judgment action is not the same as this one. In refusing to entertain the claims asserted here, the Texas Federal court has already held that they are distinct from those pending in that action. What is at issue there is whether the airplane accident is covered by USAU's excess liability policy, which involves a determination of the rights and obligations of Olympia, the insured, and USAU, the excess insurer, not those that exist between U.S. Fire and USAU, the primary and excess carriers, respectively. The issue here is not whether USAU's policy covered the airplane crash, but, rather, the purely legal question of whether U.S. Fire, in settling its own litigation, breached any duty it owed to USAU, thereby exposing USAU to liability it might not otherwise face. Although having their genesis in a common accident, the two actions are entirely different and distinct. No reason is suggested why the USAU/U.S. Fire coverage dispute cannot be expeditiously and conveniently disposed of in New York.

Accordingly, the order appealed from should be reversed

and the motion to dismiss on grounds of forum non conveniens denied.