OPINION OF THE COURT
Eileen Bransten, J.
In this shareholder derivative action, plaintiff International Painters and Allied Trades Industry Pension Fund brings suit on behalf of nominal defendant BGC Partners, Inc. (BGCP), asserting claims for breach of fiduciary duty and unjust enrichment that stem from three transactions entered into by BGCP’s Board of Directors (Board). Defendants Cantor Fitzgerald, L.E, CF Group Management, Inc., and Cantor Fitzgerald & Co. (collectively, Cantor), as well as defendants Howard W. Lutnick, Stephen T. Curwood, John H. Dalton, Barry R. Sloane, and Albert M. Weis (the individual defendants), now seek dismissal of plaintiffs complaint pursuant to CPLR 3211 (a) (7) for failure to plead demand futility and failure to state a cause of action against defendants Curwood, Dalton, Sloane, and Weis (collectively, the outside directors). Plaintiff opposes. For the reasons that follow, defendants’ motion to dismiss is granted.
I. Background
Plaintiff is a shareholder of BGCP, a global brokerage company incorporated in Delaware. (Complaint 1111 5, 6.) BGCP was founded in April 2008 — the product of a merger between one of Cantor’s brokerage units and a preexisting public company, eSpeed, Inc. (Id. H 17.) During the period at issue in this litigation, Cantor was BGCP’s controlling shareholder. (Id. U 7.) Defendant Lutnick was BGCP’s chairman and CEO, as well as Cantor’s chairman and CEO. (Id. 1i 9.) In addition, Lutnick allegedly controlled Cantor through its managing general partner, defendant CF Group Management, Inc. (Id.)
BGCP had a five-person Board of Directors. Defendant Lutnick was the chairman (id.), and was the only member of the BGCP Board affiliated with Cantor. (See defendants’ brief in support of motion to dismiss at 3.) The other four members of *772 the Board — defendants Curwood, Dalton, Sloane, and Weis— were outside directors. {Id. 1f 10.)
The instant litigation involves three transactions entered into by the BGCP Board on behalf of BGCB labeled by plaintiff as: (1) the debt transaction; (2) the equity transaction; and (3) the change-in-control transaction. Plaintiff claims that the individual defendants — the members of the BGCP Board — breached their fiduciary duties to the corporation by approving these purportedly related-party transactions. Specifically, plaintiff alleges that these three transactions unduly benefitted Cantor and defendant Lutnick, to the detriment of BGCP
A. The Debt Transaction
The debt transaction involved the sale of certain Cantor-issued notes that had been assumed by BGCP in connection with the April 2008 merger. (Complaint 1Í 20.) As the notes were set to mature in April 2010 at an interest rate of 5.19% BGCP purportedly considered options to satisfy its obligations to the third parties to whom payment on the notes was due. After the Board’s Audit Committee sought the guidance of independent legal and financial advisors, the Audit Committee approved the issuance of notes to Cantor that were due in 2015 at an 8.75% interest rate. {Id. UU 22, 24.) The proceeds from the sale of these newly-issued notes to Cantor were used to repay the 5.19% notes due to third parties. {Id.) In its complaint, plaintiff contends that this transaction was “on its face . . . unfair to [BGCP],” as the “8.75% notes reflect a 1.25% rate increase in the cost of the debt and provide Cantor with valuable conversion privileges, which if exercised, could cause substantial dilution of BGCP’s Class A common stock.” {Id. Hit 26-28.)
B. The Equity Transaction
The next transaction to which plaintiff objects is the so-called equity transaction, through which BGCP sold 3.23 million shares of its class A common stock, using defendant Cantor Fitzgerald & Co. (CF & Co.) as its sales agent. {Id. 1Í 38.) Under BGCP’s controlled equity offering sales agreement with CF & Co., the sales agent was entitled to compensation equal to 2% of the gross proceeds of any equity offerings. {Id.)
While the sale of the class A shares generated approximately $17,792,000 in net proceeds for BGCI) plaintiff asserts that the corporation received no benefits from the transaction, since BGCP then used approximately $17,371,000 of these proceeds *773 to repurchase class A common stock from Cantor. (Id. If 42.) In addition, BGCP paid CF & Co. approximately $362,000 in sales commissions. (Id.)
C. The Change-in-Control Transaction
Finally, plaintiff maintains that the amended change-in-control agreement entered into by Lutnick and BGCP was unfair to the company, given Lutnick’s “sole and exclusive ability to determine whether to effect a change in control and thus trigger his own receipt of payments and benefits from the Company.” (Complaint 1T 54.)
Lutnick and the company first entered into a change-in-control agreement in March 2008. (Id. 1Í 48.) As its name implies, this agreement provided for payment of a lump sum to Lutnick upon a change in control of BGCP (Id. 1Í 50.) On August 3, 2011, Lutnick and BGCP amended the change-in-control agreement to provide that Lutnick would continue to receive all of the benefits of the prior agreement plus immediate vesting and exchangeability of “all partnership units in BGC Holdings, L.P, including REUs, PSUs, PSIs and any other units [Lutnick] may hold.” (Id. 11 51.) Plaintiff contends that this final provision in the change-in-control agreement amendment “will unduly benefit Lutnick at the expense of [BGCP] and its minority shareholders.” (Id. 1Í 55.)
D. Instant Action
Plaintiff filed this derivative action on March 9, 2012, asserting the following claims: (1) breach of fiduciary duty against defendants Cantor, Lutnick, Curwood, Dalton, Sloane, and Weis; and (2) unjust enrichment against defendants Cantor and Lutnick. In its complaint, plaintiff acknowledges that it failed to first make a demand on the BGCP Board before commencing this litigation but asserts that it chose not to do so because demand would have been futile.
II. Analysis
Defendants now bring the instant pre-answer motion to dismiss, arguing that plaintiff has not carried its burden of pleading demand futility. Further, defendants contend that all claims against the outside directors merit dismissal because plaintiff has not alleged that defendants Curwood, Dalton, Sloane, and Weis violated their duties of loyalty or good faith. These arguments will be examined in turn.
*774 A. Demand Futility
A “cardinal precept” of Delaware law[1] is that “directors, rather than shareholders, manage the business and affairs of the corporation.” (Aronson v Lewis, 473 A2d 805, 811 [Del 1984], overruled on other grounds by Brehm v Eisner, 746 A2d 244 [Del 2000].) Since a shareholder’s ability to commence an action on behalf of a corporation “inherently impinges upon the directors’ power to manage the affairs of the corporation,” Delaware law “imposes certain prerequisites on a stockholder’s right to sue derivatively.” (Kaplan v Peat, Marwick, Mitchell & Co., 540 A2d 726, 730 [Del 1988].)
Thus, where a shareholder seeks to challenge director action, Delaware law requires that the shareholder plaintiff first make a demand upon the board to file suit on behalf of the corporation. (See Del Ch Ct Rules, rule 23.1 [a]; see also In re INFOUSA, Inc. Shareholders Litig., 953 A2d 963, 984-985 [Del Ch 2007] [“To preserve the board’s authority over ordinary business decisions, a plaintiff who initiates a derivative action must before the commencement of the action either demand that the corporate board take up the litigation itself or, in the alternative, demonstrate in a complaint why such a demand would be futile”].)
Plaintiff’s failure to make such a demand may be excused only where, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. (See e.g. White v Panic, 783 A2d 543, 551 [Del 2001]; Brehm v Eisner, 746 A2d 244, 253 [Del 2000], citing Aronson, 473 A2d at 814.) Specifically, to demonstrate demand futility under the second prong,of this test — known as the Aronson test — plaintiff must allege “particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision.” (See e.g. In re J.P. Morgan Chase & Co. Shareholder Litig., 906 A2d 808, 820, 824 [Del Ch 2005].)
Plaintiff does not contest the disinterestedness or independence of the BGCP Board, instead focusing on the second Aron- *775 son prong. Plaintiff maintains that each of the three challenged Board actions is a related-party transaction that is governed by the entire fairness doctrine. Accordingly, plaintiff argues that these transactions fall outside the protection of the business judgment rule, rendering demand futile under the Aronson test.
While plaintiff asserts that the entire fairness standard governs, plaintiff points to no case law for its proposition that the Aronson test, and its application of the business judgment rule, should be jettisoned whenever a shareholder plaintiff challenges a transaction between a corporation and its controlling shareholder. Instead, courts routinely apply the second prong of Aronson to assess demand futility in cases involving related-party transactions, determining whether the shareholder plaintiff sufficiently pleads reasonable doubt that the transactions were “otherwise the product of a valid exercise of business judgment.” (See Wood v Baum, 953 A2d 136, 139-140, 142 [Del 2008] [applying second Aronson prong to assess demand futility where plaintiff alleged board approval of “a series of ‘related party transactions’ ”]; In re Tyson Foods, Inc., 919 A2d 563, 594-595 [Del Ch 2007] [applying “standard Aronson analysis” to determine whether demand would be excused for claims involving transactions with Tyson’s controlling shareholder]; see also Loveman v Lauder, 484 F Supp 2d 259, 269-270 [SD NY 2007] [applying second Aronson prong where complaint alleged board approval of transactions between controlling shareholder and corporation].)
In fact, Aronson itself — the case that spawned the eponymous demand futility test and its second prong — involved a related-party transaction. Notwithstanding that the challenged transactions were between the corporation and one of its directors who owned 47% of its stock, the Aronson court assessed whether the transactions were “otherwise the product of a valid exercise of business judgment.” (Aronson, 473 A2d at 814-815.)
Thus, although plaintiffs argument has some surface appeal, it ultimately fails. At bottom, plaintiffs attempt to apply entire fairness in the demand futility context conflates plaintiff’s standing to pursue an action with defendants’ liability. The demand futility test is akin to a standing determination, inquiring whether the shareholder plaintiff is authorized to wrest control of the board’s ability to manage the affairs of the corporation and institute litigation as plaintiff on the corporation’s behalf. (See Aronson, 473 A2d at 811-812 [“By its very nature the derivative action impinges on the managerial *776 freedom of directors. Hence, the demand requirement of Chancery Rule 23.1 exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits”].) This threshold inquiry is governed by Aronson, and the second prong of Aronson applies the business judgment rule. Where a case is properly brought by a shareholder challenging a related-party transaction, the transaction is judged — and liability is assessed — under an “entire fairness” standard. (See Kahn v Lynch Communication Sys., Inc., 638 A2d 1110, 1115 [Del 1994] [“A controlling or dominating shareholder standing on both sides of a transaction . . . bears the burden of proving its entire fairness”].)
However, the fact that “entire fairness” is the standard governing related-party transactions does not supplant the business judgment rule as the appropriate test for standing under the Aronson second prong.[2] Indeed, in Emerald Partners v Berlin, Delaware courts first assessed whether demand was futile under Aronson and then later applied the entire fairness standard on summary judgment to assess the viability of plaintiffs challenge to a related-party transaction. (See Emerald Partners v Berlin, 1993 WL 545409, 1993 Del Ch LEXIS 273 [Dec. 23, 1993, Civ. A. No. 9700] [demand futility analysis employing business judgment rule under second Aronson prong]; Emerald Partners v Berlin, 726 A2d 1215, 1220-1221 [Del 1999] [summary judgment determination applying entire fairness].)
Accordingly, the court rejects plaintiff’s argument that the entire fairness standard applies and excuses its lack of demand. Since plaintiff offers no additional arguments to excuse its failure to make a demand, defendants’ motion to dismiss is granted.
B. The Outside Directors’ Motion to Dismiss
In addition to seeking dismissal on demand futility grounds, the outside directors — defendants Curwood, Dalton, Sloane and Weis — assert that the breach of fiduciary duty cause of action brought against them fails to state a claim. The court agrees. Thus, even if plaintiff had demonstrated that demand was futile, *777 the claims against these outside directors nonetheless would be dismissed.
BGCP’s certificate of incorporation contains an exculpatory provision, which applies to claims brought against directors for breach of fiduciary duty. (See Jealous affirmation, exhibit H.)[3] Article VII of the charter states that directors only can be held liable if they breached a duty of loyalty or acted in bad faith. (Id.) In light of this exculpation clause, to sustain its breach of fiduciary duty claim, plaintiff is required to plead a non-exculpated claim, that is a claim stating a breach of the duty of loyalty or bad faith. (See In re Morton’s Rest. Group, Inc. Shareholders Litig., 74 A3d 656, 664 [Del Ch July 23, 2013] [“if a corporation has an exculpatory provision in its certificate of incorporation under 8 Del. C. § 102(b)(7), ‘application of the exculpatory clause would lead to dismissal unless the Plaintiffs have successfully pleaded a failure to act loyally (or in good faith), which would preclude reliance on the . . . provision’ ” (citations omitted)].)
Plaintiffs pleading falls far short of this mark. As explained by the Delaware Supreme Court, “bad faith encompasses not only an intent to harm but also intentional dereliction of duty.” (Lyondell Chem. Co. v Ryan, 970 A2d 235, 240 [Del 2009].) Likewise, a breach of the duty of loyalty occurs “[w]here directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities.” (Rich ex rel. Fuqi Intl., Inc. v Yu Kwai Chong, 66 A3d 963, 981 [Del Ch 2013].) Plaintiff makes no such pleading in the complaint. Instead, plaintiff baldly asserts that the outside directors’ bad faith is manifest in their approval of the related-party transactions. However, plaintiff points to no particularized pleading in the complaint that the outside directors acted with an intent to harm BGCP or intentionally shirked their duties. At most, plaintiff pleads a disagreement with the decisions made by the Board, which is plainly insufficient to plead either bad faith or a breach of the duty of loyalty.
III. Conclusion
Accordingly, it is ordered that defendants’ motion to dismiss is granted and the complaint is dismissed; and it is further ordered that plaintiff is granted leave to serve an amended complaint within 20 days after service on plaintiffs attorney of *778 a copy of this order with notice of entry; and it is further ordered that, in the event that plaintiff fails to serve and file an amended complaint in conformity herewith within such time, leave to re-plead shall be deemed denied.

. Since BGCP is incorporated in Delaware, this demand futility inquiry is governed by Delaware law. (See Hart v General Motors Corp., 129 AD2d 179, 182 [1st Dept 1987] [“One of the abiding principles of the law of corporations is that the issue of corporate governance, including the threshold demand issue, is governed by the law of the State in which the corporation is chartered”].)

. Moreover, to the extent that courts have considered arguments similar to plaintiffs, such attempts to apply entire fairness in the demand futility context have been rejected. (See Mitchell ex rel. Broadwind Energy, Inc. v Reiland, 2012 WL 1755677, *4, 2012 US Dist LEXIS 68085, *12 [ND Ill, May 15, 2012, No. 11 C 1059] [“Plaintiff has presented no case holding that the entire fairness standard applies to the determination of whether a demand is required, and the court has found none”].)

. The court takes judicial notice of BGCP’s certificate of incorporation, as a matter of public record. (See generally Affronti v Crosson, 95 NY2d 713, 720 [2001] [taking judicial notice of document taken from public records].)