Braddock v Shwarts (2023 NY Slip Op 51050(U))

[*1]

Braddock v Shwarts

2023 NY Slip Op 51050(U)

Decided on October 6, 2023

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 6, 2023
Supreme Court, New York County

Richard Braddock, Plaintiff,

against
Michael Shwarts, Vertical Group, Defendant.

Index No. 158142/2018

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 65, 67, 68, 69, 70, 71, 72, 80, 82, 86 were read on this motion to/for DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 003) 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 66, 73, 74, 75, 76, 77, 78, 81, 83, 87 were read on this motion to/for DISMISSAL.
Plaintiff Richard Braddock (Braddock), investor in non-party Zaycon Foods, LLC (Zaycon or the Company), a food distribution company, brings this action against defendants Vertical Group (Vertical), a New York investment banking firm that Braddock hired to assist Zaycon in attracting institutional capital investment, and Michael Shwarts (Shwarts), the senior banker employed by Vertical who handled that engagement. Braddock seeks recovery for damages allegedly caused by (1) defendants' tortious interference with existing and prospective business relations and prospective economic advantage between (a) Braddock, non-party Frank Maresca (Maresca), and non-party Michael Conrad (Conrad), on the one hand, and (b) Zaycon and/or Great Hill Partners (Great Hill), a private equity firm, on the other hand, and (2) defendants' aiding and abetting of breaches of fiduciary duty on the part of Zaycon's other principals. Braddock alleges that Maresca and Conrad (collectively, the Assignors), who owned substantial equity stakes in Zaycon and held management positions in Zaycon, have assigned to him their respective claims against defendants.
Plaintiff alleges that, during the days prior to April 21, 2016, after touting Braddock's financial commitment, leadership and experience to attract investors, and after obtaining a proposal from Great Hill to invest $25 million of capital to buy into Zaycon, defendants made a series of false, misleading and, in some cases, defamatory statements that led to (a) the removal of Braddock from Braddock's positions as chairman, chief executive officer and co-managing member of the Company; (b) Great Hill's decision not to make the $25 million investment — about $4 million of which was available to be paid to Braddock and the Assignors; and (c) ultimately, the collapse of Zaycon and attendant loss of the value of the Zaycon membership interests held by Braddock and the Assignors.
Motion sequence nos. 002 and 003 are consolidated for disposition. In motion sequence no. 002, Vertical moves, pursuant to CPLR 3211 (a) (1), (5) and (7), for dismissal of the amended complaint as against it, with prejudice.
In motion sequence no. 003, Shwarts also moves, pursuant to CPLR 3211 (a) (1), (5) and (7), for dismissal of the amended complaint as against him, with prejudice.
For the reasons set forth below, the motions to dismiss are granted, and the amended complaint is dismissed.
FACTS
Zaycon's Origins
Zaycon was founded in 2010 (amended complaint [NYSCEF Doc No. 32], ¶ 21). At all relevant times, Zaycon was a manager-managed LLC (see Zaycon Certificate of Formation [NYSCEF Doc No. 45], Zaycon Annual LLC Renewal [NYSCEF Doc No. 46]). Zaycon's business model involved providing food items directly from farms to consumers (amended complaint, ¶ 22). By mid-2014, the Company lacked capital (id., ¶ 24). Braddock alleges that Zaycon's principals sought him out as an investor, and that he invested $1 million in Zaycon in August 2014 (id., ¶¶ 25, 28). Braddock went on to invest additional money in Zaycon and provided the company with convertible loans (id., ¶ 30). After several failed relationships with other investment banks, Zaycon retained Vertical in August 2015. The terms of that relationship were set forth in a Financial Advisory Agreement (NYSCEF Doc No. 43).
Retention of Vertical
As highlighted in the initial complaint, but omitted from the amended complaint, "the [Financial Advisory Agreement] stated that Vertical had no obligation or responsibility to provide any crisis management or business consulting services relating to any operational, organizational or administrative issues" (complaint [NYSCEF Doc No. 2], ¶ 37). The Financial Advisory Agreement confirms that Zaycon retained sole responsibility for its decision-making, and that Vertical was not responsible for any business decisions (Financial Advisory Agreement at 5, 8). With the exception of a $7,500 monthly retainer fee, all other compensation was contingent on a successful investment or merger (see id.).
Shwarts' Work at Zaycon and the Great Hill Proposal
In August 2015, Shwarts began working with Zaycon to attract outside investors. Zaycon had encountered difficulties obtaining investment. Soon after Vertical's retention, Braddock was appointed co-managing member of Zaycon on September 30, 2015, and CEO on October 1, 2015, and tasked with sourcing investment (amended complaint, ¶¶ 32 and 36). Shwarts familiarized himself with Zaycon's operational documents and understood the procedural requirements provided in those documents (id., ¶¶ 43-44). Zaycon (and Braddock), with help from Shwarts, continued efforts to attract outside investment, and in January 2016, [*2]Vertical and Shwarts prepared an investor presentation for Zaycon featuring Braddock as its CEO and chairman of the board and highlighting his unique background and qualifications, and sent the presentation to numerous potential investors, including Great Hill, a private equity firm based in Boston, Massachusetts (id., ¶ 45).
In April 2016, Great Hill submitted an "indication of interest" to make a $25 million investment in Zaycon (id., ¶ 46) as follows:
"GHP is proposing to finance a $25 million expansion financing and partial recapitalization of Zaycon at pre-money enterprise value of $30 million ... The GHP Proposal assumes that at closing Zaycon (a) will be debt-free; (b) will have normal course operating cash and working capital inclusive of deferred revenue and GHP's transaction expenses, among other items; and, (c) will have created a 10% unallocated incentive pool for current and future management/key employees.
* * *
The GHP Proposal assumes a newly formed blocker corporation affiliated with GHP would invest $26 million in the form of newly issued Zaycon Foods LLC senior convertible preferred LLC units (the 'Senior Preferred', which would carry a 10% cumulative dividend)"
(Great Hill Indication of Interest/Proposal [NYSCEF Doc No. 44]). Great Hill's proposal also reiterated the need for significant due diligence, satisfaction of numerous closing conditions, and a focused review of Zaycon's internal operations, customer satisfaction, technology systems, and management team (see id.).
Shwarts' Alleged Conduct
Braddock alleges that Shwarts unlawfully forced him out of Zaycon:
• "Beginning on or about April 17, 2016 Shwarts made a series of false statements to Zaycon's Other Principals which he anticipated would cause them to terminate Braddock as Zaycon's co-managing member and also to terminate his Employment Agreement and his tenure as Zaycon's chairman" (amended complaint, ¶ 50);
• Shwarts told Zaycon members that Braddock intended to meet with Great Hill to obtain more equity for himself, Braddock's management style would not be acceptable to Great Hill, and they would not proceed with the transaction unless Braddock was removed, and Shwarts did so in a manner to pressure Zaycon's member to act quickly and not contact Great Hill directly (id., ¶¶ 51-54);
• "Shwarts made all of the above-referenced false statements recklessly, or at least negligently as he had no objective basis to believe that they were true" and "as he projected his own doubts about Braddock's leadership onto Great Hill" (id., ¶¶ 60, 61);
• "The Other Zaycon Principals believed and relied on the falsehoods uttered by defendants based on the trust and confidence that they placed in Defendants as their investment banking adviser" (id., ¶ 62);
• On April 21, 2016, having obtained the written consent of 80% of Zaycon's voting members, the Other Zaycon Principals removed Braddock as co-managing member and terminated him as CEO (id., ¶¶ 72, 73);
• About a month later, Great Hill indicated it would not proceed (id., ¶ 74).
The Washington Action
In November 2016, in his first lawsuit, Braddock brought claims in the Federal District Court for the Western District of Washington State against Zaycon, its members, and their spouses (the Washington Action). In the complaint in the Washington Action, Braddock alleged that Zaycon's members fraudulently induced him to invest in Zaycon, committed various securities violations, and improperly removed him under the terms of the applicable governing documents (Washington Action amended complaint [NYSCEF Doc No. 37], ¶ 5).
The Washington Action involved claims for breach of contract, breach of fiduciary duty, fraudulent inducement, negligent misrepresentation, and securities fraud against the Zaycon members (see id.). Extensive discovery was conducted in the Washington Action, including depositions of Zaycon's members, Shwarts, and another former Vertical employee. After the close of discovery, the parties cross-moved for partial summary judgment (see cross-motions for summary judgment [NYSCEF Doc No. 39]).
On August 21, 2019, U.S. District Judge Thomas Zilly issued an order finding that Braddock's termination as co-manager and termination as CEO was proper under Zaycon's Operating Agreement and applicable law, and dismissed Braddock's claims for breach of contract and his request for a declaratory judgment (see 8/21/19 decision and order [NYSCEF Doc No. 40, Braddock v Zaycon Foods, LLC, 2019 WL 3974355, 2014 US Dist LEXIS 143108 (WD Wash, 2019), at 15]). Judge Zilly additionally requested, as part of pretrial briefing, that the parties address whether Braddock's breach of fiduciary duty claims were moot in light of his determination that Braddock's removal was proper (id. at n 5, citing Dragt v Dragt/DeTray, LLC, 139 Wash App 560, 574-75 [2007]). Before the court could reach that decision, however, Braddock settled the Washington Action for an unknown amount, and was assigned any potential claims belonging to the Assignors.
During the course of the Washington Action, Zaycon ceased operation in late 2018 (amended complaint, ¶¶ 79-80).
The Amended Complaint
In August 2018, Braddock filed this action, which was stayed by court order to allow the Washington Action to conclude. Subsequently, Braddock filed the amended complaint, which removes those claims which relied on alleged breaches of contract by Zaycon and its members, including the tortious interference with contract claim, in light of the District Court's dismissal opinion.
The amended complaint contains two causes of action against Vertical and Shwarts pertaining to their efforts to secure outside investment and Braddock's removal. The first is for tortious interference with business relations, and the second is for aiding and abetting breach of fiduciary duty. While Braddock alleged in the Washington Action that Zaycon's principals engaged in a conspiracy to oust him before he could consolidate voting power in Zaycon, here it is alleged that Shwarts provided false information to Zaycon's members, which led to Braddock's dismissal from Zaycon, and Zaycon's ultimate failure to obtain outside investment. Also included in the amended complaint are the assigned claims he alleges he obtained from other Zaycon members as part of settlements reached in the Washington Action.

 DISCUSSION
"'On a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7), [the Court must] accept the facts as alleged in the complaint as true, accord plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory'" (Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 141 [*3][2017], quoting Leon v Martinez, 84 NY2d 83, 87-88 [1994]). At the same time, however, allegations consisting of bare legal conclusions are not entitled to any such consideration (id.; Simkin v Blank, 19 NY3d 46, 52 [2012]).
Dismissal is also warranted under CPLR 3211 (a) (1) "'where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law'" (Seaman v Schulte Roth & Zabel LLP, 176 AD3d 538, 538-39 [1st Dept 2019], quoting Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, 326 [2002] ; see also Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc., 115 AD3d 128, 135 [1st Dept 2014] ["When documentary evidence is submitted by a defendant 'the standard morphs from whether the plaintiff has stated a cause of action to whether it has one'"] [citation omitted]). On a motion to dismiss under CPLR 3211 (a) (1) and 3211 (a) (7), the court may consider documents referenced in the complaint (see Donoso v New York Univ., 160 AD3d 522, 524 [1st Dept 2018]).
Construing the complaint in the generous matter to which it is entitled, this court nevertheless concludes that defendants' motions to dismiss the amended complaint must be granted, as each claim is legally deficient on its face, and/or is refuted by documentary evidence.
The Assignors' Claims
As a preliminary matter, Braddock attempts to bring claims for tortious interference with business relations that he says were assigned to him by Conrad and Maresca. However, these claims must be dismissed, because Braddock has not properly pled assignment and thus does not have standing to bring the Assignors' claims, and because any such claims are also time barred.
Braddock's bare assertion in the amended complaint that he has been assigned the claims of former Zaycon members Maresca and Conrad is completely unsupported by any writing that actually demonstrates that an assignment has been made (see amended complaint, ¶¶ 2, 17-18, 81). The amended complaint also fails to identify which claims the Assignors purportedly assigned to Braddock, claiming only that, after he settled with them, they assigned Braddock "all claims they possessed as against the instant Defendants" (id., ¶ 81). Because the pleadings fail to adequately allege the assignment of those claims, Braddock lacks standing to pursue any claims on behalf of the Assignors.
"[T]he law in New York [ ] requires either some expressed intent or reference to tort causes of action, or some explicit language evidencing the parties' intent to transfer broad and unlimited rights and claims, in order to effectuate such an assignment" (Commonwealth of Pennsylvania Pub. Sch. Employees' Retirement Sys. v Morgan Stanley & Co., Inc., 25 NY3d 543, 551 [2015]). In other words, "to make a valid assignment, the owner must manifest 'an intention to make the assignee the owner of [the] claim'" (Advanced Magnetics, Inc. v Bayfront Partners, Inc., 106 F3d 11, 17 [2d Cir 1997] [citation omitted]). If, however, a would-be assignor merely "grants another the power to sue on and collect on a claim [it] confers on the grantee a power of attorney with respect to that claim. The grant of a power of attorney, however, is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name" (id. at 17-18 [internal citations omitted]).
Here, Braddock fails to supply the court with any factual support for his claim of assignment. Thus, the pleadings do not permit the court to determine whether the assignment language used was actually a complete transfer of ownership in any claims to Braddock, or instead, operated only as a grant of power attorney which "is not the equivalent of an assignment of ownership" (Advanced Magnetics, Inc., 106 F3d at 18). Accordingly, Braddock has not [*4]properly pled the assignment of any claims to him, and thus does not have standing to pursue any of the Assignors' purported claims.
In any event, the purportedly assigned claims are time-barred, and must also be dismissed on that basis. "On a motion to dismiss a complaint pursuant to CPLR 3211 (a) (5) on statute of limitations grounds, the moving defendant must establish, prima facie, that the time in which to commence the action has expired. The burden then shifts to the plaintiff to raise an issue of fact as to whether the statute of limitations is tolled or is otherwise inapplicable" (Yang v Oceanside Union Free Sch. Dist., 90 AD3d 649, 649 [2d Dept 2011]).
Braddock alleges that, since the filing of the initial complaint, he has been assigned the Assignors' claims, and that he is now asserting claims for tortious interference with business relationships against Vertical on their behalf. However, these claims must be dismissed as time-barred, as they are being brought for the first time after the expiration of the applicable three-year statute of limitations.
The statute of 1imitations for tortious interference with a prospective business relationship is three years (see CPLR 214 (4); see also Thome v Alexander & Louisa Calder Found., 70 AD3d 88, 108 [1st Dept 2009]). "The time on that claim begins to run when the defendant performs the action (or inaction) that constitutes the alleged interference" (Thome, 70 AD3d at 108). Here, the alleged interference occurred between April 17 and April 21, 2016 (amended complaint, ¶ 51). Therefore, claims belonging to the Assignors concerning that same interference were required to be brought by April 2019. However, the first time that these claims were asserted was in connection with the amended complaint, which was not filed until June 12, 2020, more than a year later.
Furthermore, the assignment of these claims to Braddock did not toll or revive the statute of limitations (see Rizack v Signature Bank, N.A., 169 AD3d 612, 613 [1st Dept 2019] [plaintiff's claims were time-barred, as claims were not even assigned until after the statute of limitations had run]; Craft EM CLO 2006-1, Ltd. v Deutsche Bank AG, 178 AD3d 552, 553 [1st Dept 2019] ["The court correctly reasoned that plaintiff, who originally timely sued as the 'issuer' under the swap agreements, could not rely on CPLR 205 (a) when it refiled the suit as assignee of the trustee's claims, which were time-barred when assigned"]). As Braddock's allegations make clear, the Assignors' claims were not assigned until the Washington action was settled and dismissed (see amended complaint, ¶ 81), and that did not occur until February 7, 2020, after these claims had expired (see Washington Action, Docket Report [NYSCEF Doc No. 59]).
The court rejects Braddock's arguments that the relation back doctrine applies here. The narrow purpose of the relation back doctrine is to "'enable[] a plaintiff to correct a pleading error—by adding either a new claim or a new party—after the statutory limitations period has expired'" (Giambrone v Kings Harbor Multicare Ctr., 104 AD3d 546, 548 [1st Dept 2013], quoting Buran v Coupal, 87 NY2d 173, 177 [1995]). Here, however, plaintiff seeks to add newly assigned claims that he did not own, and could not have brought, during the applicable limitations period. In his opposition, Braddock contends that because the Assignors could have intervened in June 2020 to revive their admittedly time-barred claims (which include the claim for tortious interference as well as the unpled claim for negligent misrepresentation), he is now entitled to assert these claims (see plaintiff's opposition memorandum [NYSCEF Doc No. 67], at 5-8). In making this argument, however, Braddock ignores the fact that the Assignors' claims [*5]expired in April 2019, at a time when the Assignors were adverse to him.[FN1]

More importantly, the Assignors could not have intervened in June 2020 in this action to revive their time-barred claims. The Assignors' claims are not closely related to Braddock's — they are far broader than Plaintiff's — and also seek damages materially different in scope, requiring, among other things, broader factual determinations as to each Assignors' relationship with Zaycon affecting both damages and liability, and a much higher dollar amount (compare original complaint at 16 [NYSCEF Doc No. 2] with amended complaint at 17 [ad damnum clause of amended complaint seeks millions of dollars in additional liability compared to the initial complaint]). Under these circumstances, relation back is unavailable (see e.g. Insurance Co. of N. Am. v Hellmer, 212 AD2d 665, 666 [2d Dept 1995] [relation back doctrine only appropriate where the new and old plaintiff are closely related and "'the substance of the claims of the newly joined plaintiff and those of the existing plaintiff are virtually identical, where the ad damnum clause is thus the same in the proposed amended complaint as in the original complaint'"] [citation omitted]; see also Tarazi v Truehope Inc., 2017 WL 5957665, 2017 US Dist LEXIS 120155, * 36-37 [SD NY 2017] [same]; Paulay v John T. Mather Memorial Hosp., 2016 WL 1445384, * 4, 2016 US Dist LEXIS 34152, * 9-11 [ED NY 2016] [a non-party's (or new party's) otherwise-lapsed claim may not relate back to the original complaint where the new claim "would increase the measure of liability to which the defendants are exposed"]). "Thus, even where the new party's claims arise out of the same facts and circumstances as the original plaintiff's claim, to the extent that the new claim seeks different or additional damages, such claim remains subject to a statute of limitations defense" (id.; see also Hellmer, 212 AD3d at 666 [holding that, typically, an entirely separate plaintiff may not be joined in a pending action to assert an otherwise time-barred claim]).
Accordingly, any claims belonging to the Assignors must be dismissed.
Tortious Interference with Prospective Business Relationship (First Cause of Action)
In his first cause of action for tortious interference with prospective business relations, Braddock alleges that "Defendants' interference with Braddock's and his Assignors' business relations and prospective economic advantage with Zaycon and Great Hill was accomplished through Defendants' negligent and/or grossly negligent and/or reckless misrepresentations and defamatory statements" (amended complaint, ¶ 91).
The "tort of interference with business relations applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant" (WFB Telecom., Inc. v NYNEX Corp., 188 AD2d 257, 257 [1st Dept 1992]). "A claim for tortious interference with prospective business advantage must allege that: (a) the plaintiff had business relations with a third party; (b) the defendant interfered with those business relations; (c) the defendant acted with the sole purpose of harming the plaintiff or by using unlawful means; and (d) there was resulting injury to the business relationship" (Thome, 70 AD3d at 108). "[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship" (Carvel Corp. v Noonan, 3 [*6]NY3d 182, 192 [2004]; see also RXR WWP Owner LLC v WWP Sponsor, LLC, 132 AD3d 467, 469 [1st Dept 2015]).
Here, Braddock alleges Vertical improperly interfered with two separate relationships belonging to Braddock and the Assignors: (1) Zaycon and (2) Great Hill (amended complaint, ¶ 1).
1. Great Hill
With respect to the prospective contractual relationship with Great Hill, it is clear that Braddock does not have standing to assert claims on behalf of Zaycon.
The bulk of Braddock's alleged damages are based on speculative and conclusory claims that, but for the alleged interference, the Great Hill transaction would have closed, and Zaycon would have prospered. Braddock claims two categories of damages arising from Great Hill's decision to not invest in Zaycon: (1) amounts that would have been used for recapitalization through the repurchase of outstanding Zaycon units; and (2) future profits that Zaycon would have earned had the Great Hill investment occurred.
However, neither category of alleged damages can be sustained, because in both instances the benefits would have inured to Braddock indirectly, by virtue of his status as a member in Zaycon. As the indication of interest letter from Great Hill makes clear, no direct payment would have taken place between Great Hill and Braddock, and Braddock's name does not even appear in the proposal (see Great Hill Indication of Interest/Proposal). Instead, through a to-be-created blocker corporation, Great Hill would provide Zaycon with $25 million expansion financing in the form of senior convertible preferred LLC units which would be used for expansion and recapitalization (see id.). Thus, Braddock would not have been entitled to any direct benefit from any Great Hill investment because the allegedly interfered-with business relationship was Zaycon's, not Braddock's. Accordingly, any benefit Braddock would have received from Great Hill and Zaycon's relationship was derivative, and Braddock does not have standing to assert those claims (see e.g. Palmetto Partners, L.P. v AJW Qualified Partners, LLC, 83 AD3d 804, 808 [2d Dept 2011] [where documentary evidence conclusively establishes a defense to the claim, such as lack of damages, dismissal is warranted]).
Amaranth LLC v J.P. Morgan Chase & Co. (71 AD3d 40 [1st Dept 2009]), is directly on point. In that case, the Court was asked to review the dismissal of tortious interference claims brought by Amaranth LLC (Amaranth), a hedge fund, and Amaranth Advisors LLC (Advisors), its trading advisor, against J.P. Morgan Chase & Co. (J.P. Morgan). Amaranth alleged that, but for J.P. Morgan's defamation concerning Amaranth's financial solvency, a proposed lucrative deal would have closed. The Advisors in turn claimed that, if that deal had consummated, it would have received substantial payments. The Court upheld the dismissal of the Advisors cause of action for tortious interference, while allowing Amaranth's claim to proceed, finding that the proposed deal was with Amaranth and not the Advisors; thus, the Advisors were indirect beneficiaries and could not allege the existence of a proper business relationship subject to interference (id. at 49).
Similarly, in Kirch v Liberty Media Corp. (449 F3d 388, 400 [2d Cir 2006]), the Second Circuit dismissed a derivative interference claim, relying on New York's "well settled" law that brokers and agents are not entitled to bring tortious interference claims arising from contractual agreements that they are not direct parties to (see id. at 400]; see also Maruki, Inc. v Lefrak Fifth Ave. Corp., 161 AD2d 264, 268 [1st Dept 1990] ["the law is well settled that tortious interference with contract does not extend to a broker who is a stranger to the contract purportedly interfered [*7]with"]).
While Braddock may indirectly have benefited from the deal if consummated, like the Advisors in Amaranth, he would have done so only incidentally, and would have received the same proportional benefit as any other member. Accordingly, his claim for tortious interference related to any purported relation between him and Great Hill must dismissed for lack of standing.
In addition, Braddock is also unable to demonstrate the necessary causation. The Great Hill indication of interest letter contains numerous material preconditions before any Great Hill investment in Zaycon could "close." Braddock's pleading, however, fails to allege that any of those preconditions to the investment would have been met "but for" defendants' conduct. Under New York law, a claim for tortious interference with prospective business relations based on the anticipated benefits from a proposed merger that did not take place is not viable where, as here, the complaint fails to set forth that all material preconditions to the transaction would have been satisfied "but for" defendants' allegedly wrongful conduct (Buechner v Avery, 38 AD3d 443, 444 [1st Dept 2007] ["The claim for tortious interference with prospective business relations based on the anticipated benefits from a proposed merger that did not take place was not viable because the letter of intent sets forth several conditions precedent which plaintiff failed to allege would have been satisfied 'but for' defendants' allegedly wrongful conduct"]; see also Catskill Dev., L.L.C. v Park Place Entertainment Corp., 217 F Supp2d 423, 441-42 [SD NY 2002] [finding that dismissal is appropriate where the plaintiffs cannot demonstrate the deal would have closed]; Don v Singer, 33 Misc 3d 1226[A], 2011 NY Slip Op 52127[U], * 6 [Sup Ct, NY County 2011] [same]).
Great Hill's indication of interest sets forth the need for significant due diligence, and multiple material conditions to closing, including that Zaycon would be debt-free, have normal course operating cash and working capital, and would have created a 10% unallocated incentive pool for current and future management (see Great Hill Indication of Interest/Proposal). Braddock not only fails to allege that these conditions would have been met, as required to survive dismissal under Buechner, he explicitly pleads the opposite, stating that he intended to negotiate a 20% incentive pool rather than accept the proposed 10% (amended complaint, ¶ 59). Accordingly, by Braddock's own allegations, he sought different material terms for the transaction than those proposed by Great Hill, and has not pled, and will be unable to demonstrate, that an agreement would have been reached and the transaction would have closed, but for the alleged interference.
Furthermore, even assuming, arguendo, that Braddock and Great Hill had a prospective relationship, Braddock must sufficiently plead that the wrongful conduct directed at Great Hill caused the failure of that relationship (Carvel Corp., 3 NY3d at 192 [wrongful conduct must be directed "at the party with which the plaintiff has or seeks to have a relationship"]). However, the only alleged conduct directed at Great Hill is Shwarts' informing Great Hill that Braddock was objecting to the valuation amount in the proposal (see amended complaint, ¶ 55). Braddock does not allege that this event was the "but for" cause of Great Hill's loss of interest, but, rather, alleges that it was his termination — and thus, not anything that Shwarts said to Great Hill — that caused Great Hill not to invest (see id., ¶ 10). Because Braddock has not pled that any conduct directed at Great Hill was the cause of the failure of the Zaycon/Great Hill transaction, his tortious interference claim with respect to Great Hill fails on this basis as well (see Valley Lane Indus. Co. v Victoria's Secret Direct Brand Mgt., LLC, 455 Fed Appx 102, 107 [2d Cir 2012]).
Finally, Braddock fails to allege the requisite underlying wrongful conduct. The allegations that Shwarts made false statements recklessly or negligently lack the required level of scienter necessary to show wrongful conduct (see e.g. 4 K & D Corp. v Concierge Auctions, LLC, 2 F Supp 3d 525, 546 [SD NY 2014] ["the interference must be intentional, not negligent"]; see also Omnivest, Inc. v Elders Futures, Inc., 157 AD2d 528, 530 [1st Dept 1990] [defendant's actions were "at worst negligent" and "lacked the requisite intent for a tortious interference claim"]). Such allegations neither constitute intentional conduct, nor do they otherwise reach the level of the "more culpable conduct" that is a necessary element of a tortious interference with business relations claim.
The amended complaint identifies only one comment directed at Great Hill — that "Braddock was objecting to Great Hill's proposal based on valuation" (amended complaint, ¶ 55). However, this pleading fails to allege a necessary element of the tortious interference claim — i.e. that any of Shwarts' comments, including this one, were "maliciously motivated." For this reason as well, dismissal is warranted (see New St. Ice Co. v New York City Dept. of Bus. Servs., 4 AD3d 191, 192 [1st Dept 2004] ["The cause of action for tortious interference with business advantage is plainly without merit since, in light of plaintiff's admission that defendants sought to evict it in furtherance of their redevelopment plan for the South Street Seaport area, plaintiff has no sustainable claim that the complained-of interference was maliciously motivated"]).
2. Zaycon
In connection with his claim that defendants tortiously interfered with his business relationship with Zaycon, Braddock alleges that "Shwarts made a series of false statements to Zaycon's Other Principals which he anticipated would cause them to terminate Braddock as Zaycon's co-managing member, and also to terminate his Employment Agreement and his tenure as Zaycon's chairman" (amended complaint, ¶ 50). However, Braddock's termination from Zaycon does not support a claim for tortious interference with existing or prospective business relations with Zaycon. In the Washington Action, the court found that "[p]laintiff's claim that his discharge as co-manager and CEO of Zaycon constituted a breach of the Operating Agreement and/or Employment agreement lacks merit" (Washington Action decision at 3). Despite this, Braddock now attempts to recast his termination as a claim for tortious interference with business relations, which he cannot do (see WFB Telecommunications, Inc., 188 AD2d at 258 ["as defendants' termination of their relationship with plaintiffs was not improper, no cause of action may lie for either tortious interference with contractual relations or tortious interference with business relations"]).
Braddock's theory also makes no sense. He alleges that he "had a reasonable expectation of continuing to lead Zaycon in his capacities as co-managing member and chairman and CEO" (amended complaint, ¶ 88). However, that is clearly not the case, since, as the Washington Court determined, plaintiff was properly terminated from Zaycon under the relevant agreements.
In addition, none of the statements allegedly made by Shwarts constitute the sort of "more culpable conduct" required for this claim, since the merely "reckless[] or at least negligent[]" statements (amended complaint, ¶¶ 60-61) were neither maliciously motivated, nor intentionally targeted for the sole purpose of harming Braddock, as opposed to seeking investment dollars for Zaycon (see e.g. 255 Butler Assoc., LLC v 255 Butler, LLC, 173 AD3d 655, 657 [2d Dept 2019] [dismissing claim alleging tortious interference with business relations where "(t)he facts alleged in the amended complaint establish that the defendants' alleged actions were motivated by self-interest and other economic considerations, and not for the sole purpose [*8]of harming the plaintiff"]). As the Court of Appeals has also stated, wrongful means "'do not, however, include persuasion alone although it is knowingly directed at the interference with the contract'" (Carvel Corp., 3 NY3d at 191, quoting Restatement (Second) of Torts § 768, Comment e; § 767, Comment c). 
Accordingly, the first cause of action is dismissed.
Aiding and Abetting Breach of Fiduciary Duty (Second Cause of Action)
In his second cause of action for aiding and abetting breach of fiduciary duty, Braddock alleges that "Vertical and Shwarts participated in and aided and abetted the ouster of Braddock by advising the Other Zaycon Principals to terminate Braddock's employment as CEO and his status as a co-managing member and his tenure as chairman of the Company, and bolstering that advice with the above-referenced false and defamatory statements concerning Braddock" (amended complaint, ¶ 97).
Plaintiff's claim for aiding and abetting a breach of fiduciary duty fails because the complaint fails to plead the elements of this claim. An action alleging the aiding and abetting of a breach of fiduciary duty must plead (1) the existence of a fiduciary duty owed to the plaintiff that was breached; (2) that the defendant "knowingly induced or participated" in the breach; and (3) that the plaintiff suffered damages caused by the breach (Kaufman v Cohen, 307 AD2d 113, 125 [1st Dept 2003]; accord Bullmore v Ernst & Young Cayman Is., 45 AD3d 461, 464 [1st Dept 2007]).
To allege "knowing participation" in the breach, the pleading must support an inference that the defendant had "actual knowledge" of the breach (Bullmore, 45 AD3d at 464; Brasseur v Speranza, 21 AD3d 297, 299 [1st Dept 2005]). Allegations of constructive knowledge or "conclusory and sparse allegations that the aider and abettor knew or should have known about the primary breach of fiduciary duty" are insufficient (Bullmore, 45 AD3d at 464]; see also JPMorgan Chase Bank, N.A. v Controladora Comercial Mexicana S.A.B. De C.V., 29 Misc 3d 1227[A], 2010 NY Slip Op 52066[U], *16-17 [Sup Ct, NY County 2010] [dismissing claim for aiding and abetting a breach of fiduciary duty which failed to "allege with specificity" the elements of the claim and relied "on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty"]).
Importantly, where a plaintiff cannot make out an underlying claim for breach of fiduciary duty, an aiding and abetting claim cannot stand (see Oddo Asset Mgt. v Barclays Bank PLC, 19 NY3d 584, 594 [2012] ["we hold that plaintiff failed to allege facts giving rise to a fiduciary duty owed to it, and therefore (defendants) cannot be liable for aiding and abetting a breach of such fiduciary duty"]; McBride v KPMG Intl., 135 AD3d 576, 579 [1st Dept 2016] "The Ryans' claim against Avellino for aiding and abetting fiduciary duty fails because there was no underlying breach of fiduciary duty"]; Palmetto Partners, 83 AD3d at 809 ["As the cause of action to recover damages for breach of fiduciary duty must be dismissed in light of the October 16, 2008, letter it follows that the cause of action sounding in aiding and abetting in the breach of a fiduciary duty must also be dismissed"] [internal citation omitted]; accord Mountain & Isles, LLC v Gillz, LLC, 2019 NY Slip Op 30872[U], * 4 [Sup Ct, NY County 2019]).
Here, Braddock fails to state an underlying claim for breach of any fiduciary duty under applicable Washington State law, and, despite the benefit of substantial discovery, Braddock has failed to plead that Shwarts had the requisite mental state.
As Zaycon was incorporated in Washington, Washington corporate law governs the underlying fiduciary duties owed (Hart v General Motors Corp., 129 AD2d 179, 184 [1st Dept [*9]1987]; Potter v Arrington, 11 Misc 3d 962, 966 [Sup Ct, Monroe County 2006] ["a claim for breach of fiduciary duty owed to a corporation is governed by the law of the state of incorporation"]). The parties agree that New York law governs the cause of action for breach of fiduciary duty, and to prevail on such claim, a plaintiff must allege the "(1) defendant owed them a fiduciary duty, (2) defendant committed misconduct, and (3) they suffered damages caused by that misconduct" (Burry v Madison Park Owner LLC, 84 AD3d 699, 699-700 [1st Dept 2011]).
However, Braddock has failed to establish an underlying breach of fiduciary duty, which ends his aiding and abetting theory. The Washington Court dismissed Braddock's breach of contract claim because it conclusively determined that Braddock was properly removed under the relevant governing documents (see Washington Action decision). It did so because the relevant corporate governance document expressly authorized Braddock's termination. The Washington Court's determination necessarily found that Zaycon's co-manager and members did not breach any duties, as Washington and New York courts both generally hold that, where a corporate governance document "expressly authorizes" an action, it "cannot be a breach of [the defendant's] duties under that agreement to do exactly what he was authorized to do" (Cooper Dev. Co. v Friedman, 1994 WL 62846, * 5, 1884 US Dist LEXIS 1814, * 13 [SD NY 1994], affd sub nom Cooper Dev. v Friedman, 43 F3d 1458 [2d Cir 1994] [finding no breach of fiduciary duty for engaging in self-dealing conduct where partnership agreement expressly permitted it]; Seeking Valhalla Trust v Deane, 182 AD3d 457, 458 [1st Dept 2020] ["(g)iven that defendants complied with all terms of the operating agreement, plaintiffs' claim of breach of fiduciary duty was also correctly dismissed"]; see also Young v Ellis, 172 Wash App 1014, * 5 [2012]; Bishop of Victoria Corp. Sole v Corporate Bus. Park, LLC, 138 Wash App 443, 457 [2007]). In addition, Braddock is also collaterally estopped from relitigating that un-appealed determination (Buechel v Bain, 97 NY2d 295, 303-04 [2001]).
As the Washington court necessarily found that Zaycon's managers and members did not breach Zaycon's governing documents, no breach of fiduciary duty can stand regarding Braddock's removal. Indeed, Zaycon's Second Amended Operating Agreement sets forth no fiduciary duties for members or managers, and members of a manager-managed LLC, like Zaycon, do not otherwise owe fiduciary duties to each other under Washington law (see Dragt, 139 Wash App at 575 [holding that "in a manager-managed limited liability company, only those members serving as managers owe fiduciary duties: 'In a manager-managed company ... a member who is not also a manager owes no duties to the company or to the other members solely by reason of being a member'"] [citation omitted]).
In addition, Braddock fails to establish that Shwarts had the necessary mental state of the actual knowledge required for an aiding and abetting breach of fiduciary duty claim. New York case law is clear that actual knowledge, and not merely constructive knowledge, of an underlying breach of fiduciary duty is required to sustain an aiding and abetting claim. Braddock has not pled such actual knowledge on the part of Shwarts and on this basis alone, the claim fails (see Kaufman, 307 AD2d at 125).
Indeed, the allegations set forth in the amended complaint, coupled with the Washington Court's determination, indicate that Shwarts fully understood Zaycon's corporate governance, and took the steps necessary to assure that proper removal of Braddock was effectuated. According to the amended complaint: (1) Shwarts reviewed and was aware of the terms of the applicable documents (amended complaint, ¶¶ 43-44); (2) he then made various allegedly false statements (id., ¶ 51); (3) those statements were made to obtain written consent of the necessary [*10]80% of Zaycon's voting equity to remove Braddock (id., ¶¶ 66-67); (4) he did so based on his review of the applicable capitalization table (id.,¶ 68); and (5) the Washington Court determined that Braddock was properly removed (see Washington Action decision). These facts together indicate that, rather than having knowledge of a breach of fiduciary duty, Shwarts actually shepherded the Zaycon members through the removal process to assure that they acted in compliance with the corporate documents, and their duties to Zaycon. Accordingly, the pleading fails to establish any basis upon which Shwarts could have believed — let alone had "actual knowledge" of — any breach of fiduciary duty flowing from the Zaycon members' compliance with those agreements.
Accordingly, because Braddock has failed to set forth an underlying breach of fiduciary duty, or any facts to support that defendants had actual knowledge of a breach, the second cause of action for aiding and abetting breach of fiduciary duty is also dismissed.
The Financial Advisory Agreement
Finally, the Financial Advisory Agreement provides a complete defense to Braddock's claims, because it leaves all investment decisions in Zaycon's sole discretion, and precludes Zaycon's reliance on any alleged advice provided by Shwarts in making corporate governance decisions. 
Braddock's causes of action are premised on the theory that Zaycon's members relied on Shwarts' statements in deciding to terminate Braddock. For Braddock to prevail, he must establish a "but for" causation standard (Ullmannglass v Oneida, Ltd., 121 AD3d 1371, 1372 [3d Dept 2014] ["Causation is an essential element of a claim for tortious interference" and "requires proof that, 'but for' the defendants' conduct, the plaintiff would not have breached its contract with a third party"]; Riddell Sports Inc. v Brooks, 872 F Supp 73, 78 [SD NY 1995] ["This Court finds that counterplaintiffs have failed to allege facts sufficient for the Court to infer that counterplaintiffs would have consummated contractual relationships if not for counterdefendants' conduct" in connection with tortious interference with prospective business advantage claim]; Catskill, 217 F Supp 2d at 440 [causation requires more than a reasonable certainty or reasonable expectation]; Kaufman, 307 AD2d at 125 [the alleged aiding and abetting must be shown to enable the breach to occur]; Matter of Refco Inc. Securities Litigation, 826 F Supp2d 478, 518 [SD NY 2011] [New York law requires but for causation for aiding and abetting]).
Under New York law, where an agreement expressly leaves decisions in a party's "sole discretion" — as this agreement does — that party's reliance on another cannot be found to be the "but for" cause for that decision (Bank Leumi Trust Co. of NY v D'Evori Intl., Inc., 163 AD2d 26, 32 [1st Dept 1990]; CrossLand Fed. Sav. Bank by F.D.I.C. v A. Suna & Co., Inc., 935 F Supp 184, 193 [ED NY 1996] [both finding that parties could not argue that they relied on other parties where applicable agreements provided they maintained "sole discretion"]).
Here, the Financial Advisory Agreement between Zaycon and Vertical provides that:
"Vertical is not assuming any responsibility for [Zaycon's] decision to pursue, or not to pursue, any business strategy, or to effect, or not to effect, the Transaction or the M&A Transaction, which decision shall be made by [Zaycon] in its sole discretion. Vertical acknowledges and agrees that [Zaycon] has the sole and absolute discretion to engage or refuse to engage in discussions regarding the Transaction or the M&A Transaction, to accept or reject the Transaction or the M&A Transaction and to consummate or refuse to consummate the Transaction or the M&A Transaction"
***
All final decisions with respect to [Zaycon's] acts, whether or not made pursuant to or in reliance upon information or advice furnished by Vertical hereunder, shall be those of the Company, and Vertical shall under no circumstances be liable for any expense incurred or loss suffered by [Zaycon] as a consequence of such decisions"
(Financial Advisory Agreement at 5, 8).
Accordingly, the Financial Advisory Agreement clearly establishes that Zaycon was unilaterally responsible for its own decision-making, and that Vertical was not legally responsible for any business decision Zaycon elected to make. As such, any alleged advice that Shwarts gave (which was provided in his capacity as a Managing Director of Vertical) could not have been the "but for" cause of Braddock's termination, which he alleges was the catalyst for both of his claims. Indeed, terminating Braddock was an internal governance decision of the LLC, for which the Zaycon members were prohibited from relying on any alleged advice from Shwarts.
Thus, the amended complaint must be dismissed on this basis as well.
Accordingly, it is
ORDERED that the motions of defendants Vertical Group and Michael Shwarts (motion sequence nos. 002 and 003) to dismiss the amended compliant herein are granted, and the amended complaint is dismissed in its entirety as against said defendants, with costs and disbursements to said defendants as taxed by the Clerk of the Court upon the submission of an appropriate bill of costs; and it is further
ORDERED that the Clerk is directed to enter judgment accordingly.
DATE 10/06/2023
ROBERT R. REED, J.S.C.

Footnotes

Footnote 1:Braddock at that time was suing the assignors for allegedly defrauding him in connection with his removal from Zaycon and the failed Great Hill investment.